Douglas R. Ricks, OSB #044026
Colleen A. Lowry, OSB #123743
VANDEN BOS & CHAPMAN, LLP
319 S.W. Washington, Suite 520
Portland, Oregon 97204
TELEPHONE: (503) 241-4869
FAX: (503) 241-3731

Of Attorneys for Debtor

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>Kristi Maria Polukeev,<br><br><br>Debtor. | Case No. 16-34486-tmb13<br><br>NOTICE OF INTENT TO SELL REAL PROPERTY AND MOTION FOR AUTHORITY TO SELL REAL PROPERTY (*8815 SW Oleson Rd., Portland, OR 97223*) |

### NOTICE OF INTENT TO SELL REAL PROPERTY

Kristi Maria Polukeev ("Debtor") proposes to take the following action and files

this Notice of Intent to Sell Real Property requesting authority to:

Sell the real property located at 8815 SW Oleson Rd., Portland, OR 97223 for
$825,000.00.

**YOU ARE HEREBY NOTIFIED** that unless within twenty-one (21) days of the filing date

of this notice (September 16, 2021) you: (1) file a written objection to the sale of the

above-described property, setting forth the specific grounds for such objection and your

relation to the case, with the Clerk of Court, 1050 SW 6th Ave., 7th Floor, Portland,

Oregon 97204; and (2) mail a copy to Debtor's attorney, Douglas R. Ricks, 319 SW

Washington St. Suite 520, Portland, Oregon 97204, the undersigned will proceed to take the proposed action, or apply for a court order if required, without further notice or a hearing.

**MOTION FOR AUTHORITY FOR SALE OF REAL PROPERTY**

Debtor, by and through her attorneys, Vanden Bos & Chapman, LLP, hereby moves this Court for authority to sell the real property located at 8815 SW Oleson Rd., Portland, OR 97223 (the "Property") and with the legal description as follows:

Beginning at the Northwest comer of the Southeast one-quarter, Northeast one-quarter of Section 26, Township 1 South, Range 1 West, of the Willamette Meridian, in the County of Washington and State of Oregon; thence South 89° 38' East along the North line of said Southeast one-quarter, Northeast one-quarter of Section 26. A distance of 296.76 feet to an iron pipe; thence South 471.60 feet to an iron pipe, which iron pipe is the true point of beginning of the herein described tract, and the Southwest comer of that certain tract conveyed to Howard T Multhauf, et ux, by deed recorded January 5. 1943 in Book 214, No. 9325; thence from the above described true point of beginning South 89° 43' East 138.93 feet along said Multhauf Tract to an iron pipe, which is the Northwest corner of that certain tract conveyed to Jack E. Hannula, et ux, by deed recorded July 26, 1943 in Book 223, Page 515; thence South 188.02 feet along said Hannula Tract to an iron pipe on the Northerly boundary of the County Road; thence continuing South 35.42 feet to a point in the center of said County Road; thence South 57° 52' West along the center of said County Road 164.06 feet to a point; thence North 35.42 feet to an iron pipe on the Northerly boundary of said County Road; thence continuing North 275.96 feet to the place of beginning.

COMMONLY KNOWN AS: 8815 SW Oleson Road, Portland, OR 97223

1.     The Debtor's Chapter 13 Plan dated 9/29/20 (Doc. #56) (the "Plan") contemplated the sale of the Property at paragraph 14.

2.     The Debtor is co-owner of the real property with her estranged husband, Vladimir Polukeev.  However, Vladimir Polukeev conveyed his one-half interest in the

NOTICE OF INTENT TO SELL REAL PROPERTY AND
MOTION FOR AUTHORITY TO SELL REAL PROPERTY
(*8815 SW Oleson Rd., Portland, OR 97223*)

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

property to the debtor, Kristi Polukeev, by Real Estate Contract recorded in Washington County, State of Oregon, on November 28, 2016, as File No. 2016-097999, for the purchase price of $93,000.00.

3.     The Addendum to Real Estate Contract recorded in Washington County, State of Oregon, on August 23, 2021, as File No. 2021-091198, states that the remaining balance on the purchase price to be distributed to Vladimir Polukeev from the sale proceeds of the real property is $30,000.00.

4.     The Addendum to Real Estate Contract recorded in Washington County, State of Oregon, on August 23, 2021, as File No. 2021-091198, also states that $35,000.00 from the sale proceeds of the real property shall be placed into a college trust account for the benefit of Kade Polukeev, the minor child of Kristi and Vladimir Polukeev and to be accessible to the minor child at age 18.

5.     Debtor has accepted an offer for sale at $825,000.00 as stated on the Seller's Counter Offer No. 1 attached to Residential Real Estate Sale Agreement that is attached to the motion that was filed with the Court as **Exhibit 1**.  The anticipated buyer is Jerry Odell Bybee and Juanita Anne Bybee who have no relationship to the Debtor. Copies of **Exhibit 1** are available upon request from Debtor's counsel.

6.     The sale price was negotiated in an arms-length transaction; no independent appraisal has been conducted.

7.     The Preliminary Title Report for the real property is attached to the motion that was filed with the Court as **Exhibit 2**.  Copies of **Exhibit 2** are available upon request from Debtor's counsel.

NOTICE OF INTENT TO SELL REAL PROPERTY AND
MOTION FOR AUTHORITY TO SELL REAL PROPERTY
(*8815 SW Oleson Rd., Portland, OR 97223*)

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

8.     The Estimated Closing Statement will be provided to the Chapter 13 Trustee as soon as it is made available from escrow.  Escrow has been opened with Lawyers Title of Oregon, LLC, Shelley Williams, Escrow Officer, 6000 Meadows Rd., Suite 100, Lake Oswego, OR 97035.

9.     **This transaction is a "traditional" sale of the property and the authority requested is pursuant to Section 363(b).**  Debtor does **not** seek authority for a short sale or sale free-and-clear.  Secured creditor(s) will be paid through escrow to extent of payoff quote(s).

10.    As a condition of sale, closing is scheduled on or before October 15, 2021.

11.    There is no adverse impact on creditors.  Proceeds from the sale of the Property will be paid to all creditors, including all unsecured creditors, who filed claims. All claims shall be paid 100%.

12.    The proceeds from the sale of the Property will be applied to the following items in the following order:

(a)    Liens and security interests against the real estate, excluding the distributions under the recorded Real Estate Contract and recorded Addendum to Real Estate Contract;

(b)    $30,000.00 to Vladimir Polukeev pursuant to the recorded Addendum to Real Estate Contract;

(c)    $35,000.00 to be placed into a college trust account for the benefit of the minor child, Kade Polukeev, pursuant to the recorded Addendum to Real Estate Contract;

(d)    Sale commissions and closing costs;

NOTICE OF INTENT TO SELL REAL PROPERTY AND
MOTION FOR AUTHORITY TO SELL REAL PROPERTY
(*8815 SW Oleson Rd., Portland, OR 97223*)

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

(e)     Payment to the Chapter 13 Trustee for distribution under the Plan; and

(f)     Any remaining funds to the debtor, Kristi Maria Polukeev.

WHEREFORE, Debtor prays that this Court enter an order authorizing sale of the

Property on terms set forth herein.

Dated:  September 16, 2021              Respectfully Submitted;

VANDEN BOS & CHAPMAN, LLP

By:/s/Colleen A. Lowry for Douglas R. Ricks
    Douglas R. Ricks, OSB #044026
    Of Attorneys for Debtor

NOTICE OF INTENT TO SELL REAL PROPERTY AND
MOTION FOR AUTHORITY TO SELL REAL PROPERTY
(*8815 SW Oleson Rd., Portland, OR 97223*)

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869


OREF
Oregon Real Estate Forms, LLC™

Sale Agreement # **Bybee 01**

RESIDENTIAL REAL ESTATE SALE AGREEMENT
OREF 001 | Ver. 1.1 | Page 1 of 11

## FINAL AGENCY ACKNOWLEDGMENT

1  Both Buyer and Seller acknowledge having received the Oregon Real Estate Agency Disclosure Pamphlet, and hereby acknowledge and consent
2  to the following agency relationships in this transaction: **Tracy Davis-Sharp**
3  _____ (Name of Buyer's Agent(s)*), Oregon Lic. # **201107021** _____
4  of **Realty One Group Prestige** _____ (Name of Real Estate Firm(s)*)
5  Buyer's Agent's Office Address **15220 NW Greenbrier Pkwy STE 310 Beaverton OR 97006** ____, Company Lic # **201222896**
6  Phone#1 **(503) 875-2805** _____ Phone #2 _____ E-mail **sharpproperties2014@gmail.com**
7  is/are the agent of (check one): ☑ Buyer exclusively ("Buyer Agency"). ☐ Both Buyer and Seller ("Disclosed Limited Agency").
8  **Marc A Fox, Matthew Soukup** _____ (Name of Seller's Agent(s)*), Oregon Lic. # **200508221, 201214742**
9  of **Keller Williams Realty Portland Premiere, Keller Williams Realty Portland Premiere** (Name of Real Estate Firm(s)*)
10 Seller's Agent's Office Address **7504 SW Bridgeport Rd Portland OR 97224** _____, Company Lic # **200509347**
11 Phone #1 **(503) 515-5044** _____ Phone #2 _____ E-mail **marc@foxrealestategroups.com**
12 is/are the agent of (check one): ☑ Seller exclusively ("Seller Agency"). ☐ Both Buyer and Seller ("Disclosed Limited Agency").
13 **\*If Buyer's and/or Seller's Agents and/or Firms are co-selling or co-listing in this transaction, all Agents and Firm names should be**
14 **disclosed above.**
15 If both parties are each represented by one or more Agents in the same Real Estate Firm, and Agents are supervised by the same principal broker
16 in that Real Estate Firm, Buyer and Seller acknowledge said principal broker become the disclosed limited agent for both Buyer and Seller as
17 more fully explained in the Disclosed Limited Agency Agreements that have been reviewed and signed by Buyer, Seller and Agent(s).
18 Buyer shall sign this acknowledgment at the time of signing this Agreement before submission to Seller. Seller shall sign this acknowledgment at the time this
19 Agreement is first submitted to Seller, even if this Agreement will be rejected or a counter offer will be made. Seller's signature to this Final Agency
20 Acknowledgment shall not constitute acceptance of this Agreement or any terms therein.

21 Buyer _____ Print **Jerry Odell Bybee** ____ Date **9/6/2021** ←
22 Buyer _____ Print **Juanita Anne Bybee** ___ Date **9/6/2021** ←
23 Seller _____ Print **VLADIMIR A POLUKEEV** __ Date **9/7/2021 | 9:30 PM EI**
24 Seller _____ Print _____ Date _____ ←

## RESIDENTIAL REAL ESTATE SALE AGREEMENT

25 **THIS AGREEMENT IS INTENDED TO BE A LEGAL AND BINDING CONTRACT. IF IT IS NOT UNDERSTOOD, SEEK COMPETENT LEGAL**
26 **ADVICE BEFORE SIGNING. FOR AN EXPLANATION OF THE PRINTED TERMS AND PROVISIONS IN THIS FORM REGARDING TIMING,**
27 **NOTICE, BINDING EFFECT, ETC., SELLER AND BUYER ARE ENCOURAGED TO CLOSELY REVIEW THE DEFINITIONS AND**
28 **INSTRUCTIONS SECTION BELOW**
29 **1. PRICE/PROPERTY DESCRIPTION:** Buyer **Jerry Odell Bybee, Juanita Anne Bybee**
30 _____
31 offers to purchase from Seller **VLADIMIR A POLUKEEV** _____
32 _____
33 the following described real property (hereinafter "the Property") situated in the State of Oregon, County of **Washington** ____,
34 and commonly known or identified as (insert street address, city, zip code, tax identification number, lot/block description, etc.)
35 **8815 SW OLESON RD, Portland, OR 97223** _____
36 _____
37 (Buyer and Seller agree, if it is not provided herein, a complete legal description as provided by the title insurance company in accordance with
38 Section 9 (Title Insurance) below shall, where necessary, be used for purposes of legal identification and conveyance of title.)
39 for the Purchase Price (in U.S. currency) of ............................................................................A $ **800,000.00** _____
40 on the following terms: Earnest money herein receipted for ........................................B $ **10,000.00** _____
41 on _____, as additional earnest money, the sum of ................C $ _____
42 at or before Closing, the balance of down payment ........................................D $ **70,000.00** _____
43 at Closing and upon delivery of ☑ DEED ☐ CONTRACT the balance of the Purchase Price ............E $ **720,000.00** _____
44 shall be paid as agreed in Financing Section of this Agreement. (Lines B, C, D and E should equal Line A)
45 **2. FIXTURES/CONTROLS/KEYS:** All fixtures and essential related equipment (e.g. remote controls, smart home features, and all keys related
46 to Property including mailbox, outbuilding(s), etc.) are to be left upon the Property. Fixtures shall include but not be limited to: built-in appliances;

Buyer Initials _____ Date **9/6/2021** ____  Seller Initials _____ Date **9/7/2021 | 9:30**

This form has been licensed for use solely by the named user below pursuant to a Forms License agreement with Oregon Real Estate Forms, LLC.
LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE OF BUYER AND/OR SELLER AND DATE
Copyright Oregon Real Estate Forms, LLC 2021     www.orefonline.com
No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC

OREF 001 | Page 1 of 11

**Exhibit 1**
Page 1 of 12     Case 16-34486-tmb13     Doc 60     Filed 09/16/21
Created by **eBagel Sharp** using SkySlope® Forms



47 attached floor coverings; drapery rods and curtain rods; window and door screens; storm doors and windows; system fixtures (irrigation, plumbing,
48 ventilating, cooling and heating); water heaters; attached electric light and bathroom fixtures; light bulbs; fluorescent lamps; window blinds;
49 awnings; fences; all planted shrubs, plants and trees; EXCEPT: _____
50 _____

51 **3. PERSONAL PROPERTY:** Only the following personal property, in **"AS-IS"** condition and at no stated value is included:
52 Pool table, washer and dryer, refrigerator, kitchen range, dishwasher, kitchen island, draperies or
53 curtains
54 _____

## FINANCING

55 **4. BALANCE OF PURCHASE PRICE:** *(Select A or B)*
56 Buyer represents, Buyer has liquid and available funds for the earnest money deposit and down payment, and if an all cash transaction, the full purchase
57 price, sufficient to Close the transaction described herein and is not relying upon any contingent source of funds (e.g., from loans, gifts, sale or closing of other
58 property, 401K disbursements, etc.), except as follows *(describe)*: _____
59 _____

60 **A.** ☐ **This is an all cash transaction.** Buyer to provide verification ("Verification") of readily available funds as follows (*select only one*):
61 ☐ Buyer has attached a copy of the Verification with the submission of this Agreement to Seller. ☐ Buyer will provide Seller with the Verification
62 within ____ business days (five [5] if not filled in) after this Agreement has been signed and accepted; or ☐ Other *(Describe)*:_____
63 _____
64 Seller may notify Buyer, in writing, of Seller's unconditional disapproval of the Verification within ___ business days (two [2] if not filled in)
65 ("Disapproval Period") following its receipt by Seller. Provided, however, such disapproval must be objectively reasonable. Upon such disapproval,
66 all earnest money deposits shall be promptly refunded to Buyer and this transaction shall be terminated. **If Seller fails to provide Buyer with**
67 **written unconditional disapproval of the Verification by 5:00 p.m. of the last day of the Disapproval Period, Seller shall be deemed to**
68 **have approved the Verification. If Buyer fails to submit a Verification within a time frame selected above, unless the parties agree**
69 **otherwise in writing, all earnest money deposits shall be promptly refunded, and this transaction shall be terminated.**

70 **B.** ☑ **Balance of Purchase Price to be financed through one of the following Loan Programs** *(Select only one)*:
71 ☐ Conventional; ☐ FHA; ☑ Federal VA (Seller ☑ Shall ☐ Shall not agree to pay Buyer's non-allowable VA fees);
72 If FHA or Federal VA is selected, **OREF 097 FHA / Federal VA Amendatory Clause** is attached.
73 ☐ Other *(Describe)*: _____.
74 **Buyer agrees to seek financing through a lending institution or mortgage broker (hereinafter collectively referred to as**
75 **"Lender") participating in the Loan Program selected above.**

76 **C. Pre-Approval Letter.** ☐ Buyer has attached a copy of a Pre-Approval Letter from Buyer's Lender; ☑ Buyer does not have a Pre-Approval
77 Letter at the time of making this offer; ☑ Buyer agrees to secure a Pre-Approval Letter and provide a copy to Seller as follows: Buyer's
78 agent shall email a preapproval letter to Seller's agent on or before Tuesday, September 7, 2021

79 **5.1 FINANCING CONTINGENCIES:** If Buyer is financing any portion of the Purchase Price, then this transaction is subject to the following
80 financing contingencies: (1) Buyer and the Property to qualify for the loan from Lender; **(2)** Lender's appraisal shall not be less than the Purchase
81 Price; and, (3) Other *(Describe)*: _____
82 _____
83 Except as otherwise provided herein, all Financing Contingencies are solely for Buyer's benefit and may be waived by Buyer in writing at any time.

84 **5.2 FAILURE OF FINANCING CONTINGENCIES:** If Buyer receives actual notification from Lender that any Financing Contingencies identified
85 above have failed or otherwise cannot occur, Buyer shall promptly notify Seller, and the parties shall have ____ business days (two [2] if not filled
86 in) following the date of Buyer's notification to Seller to either (a) Terminate this transaction by signing an **OREF 057 Termination Agreement**
87 and/or such other similar form as may be provided by Escrow; or (b) Reach a written mutual agreement upon such price and terms that will permit
88 this transaction to continue. Neither Seller nor Buyer are required under the preceding provision (b) to reach such agreement. If (a) or (b) fail to
89 occur within the time period identified in this Section 5.2 (Failure of Financing Contingencies), this transaction shall be automatically terminated,
90 and all earnest money shall be promptly refunded to Buyer. Buyer understands, upon termination of this transaction, Seller shall have the right to
91 place the Property back on the market for sale upon any price and terms as Seller determines, in Seller's sole discretion.

92 **5.3 BUYER REPRESENTATIONS REGARDING FINANCING:** Buyer makes the following representations to Seller: (1) Buyer's completed loan
93 application, as hereinafter defined, shall be submitted to the Lender who provided the Pre-Approval Letter, a copy of which has been delivered to
94 Seller, or will be, pursuant to Section 4C (Pre-Approval Letter), above.

| Buyer Initials | ___/___ Date 9/6/2021 | | Seller Initials | ___/___ Date 9/7/2021 | 9:30 |

This form has been licensed for use solely by the named user below pursuant to a Forms License agreement with Oregon Real Estate Forms, LLC.
**LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE OF BUYER AND/OR SELLER AND DATE**
Copyright Oregon Real Estate Forms, LLC 2021          www.orefonline.com
No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC          OREF 001 | Page 2 of 11

**Exhibit 1**
Created by JTB of Farleigh Wada Witt on SkySlope® Forms          Case 16-34486-tmb13    Doc 60    Filed 09/16/21



95  (2) Buyer shall submit to Buyer's Lender a completed loan application for purchase of the Property not later than ___ business days (three [3] if not
96  filled in) following the date Buyer and Seller have signed and accepted this Agreement.  A "completed loan application" shall include the following
97  information: (i) Buyer's name(s); (ii) Buyer's income(s); (iii) Buyer's social security number(s); (iv) the Property address; (v) an estimate of the value of the
98  Property; and (vi) the loan amount sought.

99  (3) Buyer agrees, if Buyer intends to proceed with the loan transaction, Buyer will so notify Lender within ___business days (three [3] if not filled in – but not to
100 exceed ten [10]) in such form as required by said Lender, following Buyer's receipt of Lender's Loan Estimate. Upon request, Buyer shall promptly notify Seller
101 of the date of Buyer's signed notice of intent to proceed with the loan.

102 (4) Buyer will thereafter complete all paperwork requested by the Lender, including payment of all application, appraisal and processing fees, to
103 obtain the loan.

104 (5) Buyer understands and agrees, Buyer may not replace the Lender or Loan Program already selected, without Seller's written consent, which
105 may be withheld in Seller's sole discretion.

106 (6) Following submission of the loan application, Buyer agrees to keep Seller promptly informed of all material non-confidential developments
107 regarding Buyer's financing and the time of Closing.

108 (7) Buyer shall authorize the Lender to order the appraisal no later than expiration of the Inspection Period at Section 10 (Inspections), below of this
109 Agreement, (or Section 1 of the OREF 058 Professional Inspection Addendum if used).

110 (8)  Buyer authorizes Buyer's Lender to provide non-confidential information to Buyer's and Seller's Agents regarding Buyer's loan application
111 status.

112 **6.1 INSURANCE:** Buyer is encouraged to promptly verify the availability and cost of property/casualty/fire insurance that will be secured for the
113 Property. Additionally, Lenders may require proof of property/casualty/fire insurance as a condition of the loan.

114 **6.2 FLOOD INSURANCE; ELEVATION CERTIFICATE:** If the Property is located in a designated flood zone, flood insurance may be required as a
115 condition of a new loan. Buyer is encouraged to promptly verify the need, availability, and cost of flood insurance, if applicable. An Elevation
116 Certificate ("EC") is the document used by the federal National Flood Insurance Program ("NFIP") to determine the difference in elevation between
117 a home or building  and the base flood elevation ("BFE"), which is a computed elevation to which floodwater is anticipated to rise during certain floods.
118 The amount of flood insurance premium for a particular property is based upon the EC. Not all properties in flood zones require an EC, depending
119 upon when they were constructed. ECs must be prepared and certified by a land surveyor, engineer, or architect who is authorized by the local
120 jurisdiction to certify elevation information. The costs and fees for an EC may range from a few hundred dollars to over a thousand. **If the Property**
121 **requires an EC, it will need to be obtained prior to receiving a flood insurance quote. Additionally, Lenders may require an EC as a**
122 **condition of loan approval. For more information, go to the following website: www.fema.gov**

123 **7. SELLER-CARRIED FINANCING (E.G., LAND SALE CONTRACT/TRUST DEED/MORTGAGE/OPTION AGREEMENTS, RENT-TO-OWN,**
124 **ETC.):** Notice to Buyer and Seller: If this transaction involves a land sale contract, trust deed, mortgage, option, or lease-to-own agreement
125 (hereinafter a "Seller Carried Transaction"), Oregon law requires, unless exempted, individuals offering or negotiating the terms must hold a
126 mortgage loan originator ("MLO") license. Your real estate agent is not qualified to provide these services or to advise you in this regard. Legal
127 advice is strongly recommended.  If this is a Seller-Carried Transaction, Buyer and Seller are advised to review the OREF 032 Seller-Carried
128 Transactions Buyer and Seller Advisory. Buyer and Seller agree as follows (select only one):

129 ☐ (a) Use the **OREF 033 Seller-Carried Transaction Addendum** and related forms; or

130 ☐ (b) Secure separate legal counsel to negotiate and draft the necessary documents or employ an MLO

131 Seller and Buyer agree, regardless of whether (a) or (b) is selected, they will reach a signed written agreement upon the terms and conditions of such
132 financing (e.g., down payment, interest rate, amortization, term, payment dates, late fees, balloon dates, etc.) within ___business days (ten [10] if
133 not filled in) commencing on the next business day following the date they have signed and accepted this Sale Agreement ("Negotiation of Terms
134 Period"). Upon failure of Buyer and Seller to reach agreement by 5:00 p.m. on the last day of the Negotiation of Terms Period, or such other times
135 as may be agreed upon in writing, all earnest money deposits shall be refunded to Buyer and this transaction shall be automatically terminated.
136 *Caveat: Buyer's and Seller's Agents are not authorized to render advice on these matters. Buyer and Seller are advised to secure*
137 *competent legal advice while engaged in a Seller-Carried Transaction.*

138 **8. ADDITIONAL FINANCING PROVISIONS (e.g. Closing Costs):**  <u>Seller to pay two percent of the purchase price</u>
139 <u>towards buyers funds required at closing.</u>
140 _____

Buyer Initials JB/JB Date 9/6/2021          Seller Initials LMP/___ Date 9/7/2021 | 9:30

This form has been licensed for use solely by the named user below pursuant to a Forms License agreement with Oregon Real Estate Forms, LLC.
LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE OF BUYER AND/OR SELLER AND DATE
Copyright Oregon Real Estate Forms, LLC 2021          www.orefonline.com
No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC

OREF 001 | Page 3 of 11



## CONTINGENCIES

141  **9. TITLE INSURANCE:** When this Agreement is signed and accepted by Buyer and Seller, Seller will, at Seller's sole expense, promptly order from
142  the title insurance company selected at Section 24  (Escrow), below, a preliminary title report and copies of all documents of record ("the Report
143  and Documents of Record") for the Property, and furnish them to Buyer at Buyer's contact location as defined at Section 32 (3)
144  (Definitions/Instructions), below. Unless otherwise provided herein, this transaction is subject to Buyer's review and approval of the Report and
145  Documents of Record **(If, upon receipt, the Report and Documents of Record are not fully understood, Buyer should contact the title**
146  **insurance company for further information or seek competent legal advice). The Buyer's and Seller's Agents are not qualified to advise**
147  **on specific legal or title issues.)** Upon receipt of the Report and Documents of Record Buyer shall have ___ business days (five [5] if not filled in)
148  within which to notify Seller, in writing, of any matters disclosed in the Report and Documents of Record which is/are unacceptable ("the
149  Objections"). Buyer's failure to timely object in writing shall constitute acceptance of the Report and/or Documents of Record. However, Buyer's
150  failure to timely object shall not relieve Seller of the duty to convey marketable title to the Property pursuant to Section 29 (Deed), below. If, within
151  ___ business days (five [5] if not filled in) following Seller's receipt of the Objections, Seller fails to remove or correct the matters identified therein,
152  or fails to give written assurances reasonably satisfactory to Buyer of removal or correction prior to Closing, all earnest money shall be promptly
153  refunded to Buyer-and this transaction shall be terminated. This contingency is solely for Buyer's benefit and may be waived by Buyer in writing.
154  Within thirty (30) days after Closing, the title insurance company shall furnish to Buyer, an owner's standard form policy of title insurance insuring
155  marketable title in the Property to Buyer in the amount of the Purchase Price, free and clear of the Objections, if any, and all other title exceptions
156  agreed to be removed as part of this transaction. *(Note: This Section 9 (Title Insurance) provides Seller will pay for Buyer's standard owner's*
157  *policy of title insurance.  In some areas of the country, such a payment might be regarded as a "seller concession." Under the*
158  *TILA/RESPA Integrated Disclosure Rules ["the Rules"], there are limitations, regulations and disclosure requirements on "seller*
159  *concessions", <u>unless</u> the product or service paid for by the Seller was one <u>customarily</u> paid by sellers in residential sales transactions.*
160  *In Oregon, sellers customarily and routinely pay for their buyer's standard owner's policy of title insurance.  Accordingly, unless the*
161  *terms of this Section 9 (Title Insurance) are modified in writing by Buyer and Seller, the parties acknowledge, agree and so instruct*
162  *Escrow, in this transaction, Seller's payment of Buyer's standard owner's policy of title insurance is <u>not</u> a "seller concession" under the*
163  *Rules or any other federal law.)*

164  **10. INSPECTIONS/ENVIRONMENTAL HEALTH CONDITIONS:** The following list identifies some, but not all, environmental conditions found in
165  and around all real property that may affect health: asbestos, **carbon** monoxide, electric and magnetic fields, formaldehyde, lead and other
166  contaminants in drinking water and well water, lead based paint, mold and mildew, radon, and leaking underground storage tanks. If Buyer has any
167  concerns about these conditions or others, Buyer is encouraged to secure the services of a licensed professional inspector, consultant, or health
168  expert, for information and guidance.  Neither the Buyer's nor Seller's Agents are experts in environmental health hazards or conditions.  Buyer
169  understands it is advisable to have a complete inspection of the Property by a qualified licensed professional(s) relating to such matters as
170  structural condition, soil condition/compaction/stability, environmental issues, survey, zoning, operating systems, and suitability for Buyer's intended
171  purpose.  Neither Buyer's nor Seller's Agent are qualified to conduct such inspections and shall not be responsible to do so.  For further details,
172  Buyer is encouraged to review the Buyer Advisory at www.oregonrealtors.org and the Oregon Public Health Division at
173  www.public.health.oregon.gov.

174  *Check only one box below:*

175  ☑ **LICENSED PROFESSIONAL INSPECTIONS:** At Buyer's expense, Buyer may have the Property and all elements and systems thereof
176  inspected by one or more licensed professionals of Buyer's choice.  Provided, however, Buyer must specifically identify in this Agreement any
177  desired invasive inspections that may include testing or removal of any portion of the Property including, for example, radon and mold.  **Identify**
178  **Invasive Inspections:**  radon and sewer scope                                                                      .
179  Buyer understands, Buyer is responsible for the restoration of the Property following any inspection(s)/test(s) performed by Buyer or on Buyer's
180  behalf.  Buyer shall have _____ business days (ten [10] if not filled in), after the date Buyer and Seller have signed and accepted this Agreement
181  (hereinafter "the Inspection Period"), in which to complete all inspections **and** negotiations with Seller regarding any matters disclosed in any
182  inspection report. Buyer shall **not** provide all or any portion of the inspection reports to Seller unless requested by Seller. However, at any time
183  during this transaction, or promptly following termination, upon request by Seller, Buyer shall promptly provide a copy of such reports or portions of
184  reports, as requested. During the Inspection Period, Seller shall not be required to modify any terms of this Agreement already reached with Buyer.
185  Unless a written agreement has already been reached with Seller regarding Buyer's requested repairs, at any time during the Inspection Period,
186  Buyer may notify Seller, in writing, of Buyer's unconditional disapproval of the Property based on any inspection report(s), in which case, all earnest
187  money deposits shall be promptly refunded, and this transaction shall be terminated. **If Buyer fails to provide Seller with written unconditional**
188  **disapproval of any inspection report(s) by 5:00 p.m. of the final day of the Inspection Period, Buyer shall be deemed to have accepted the**
189  **condition of the Property. Note if, prior to expiration of the Inspection Period, written agreement is reached with Seller regarding Buyer's**
190  **requested repairs, the Inspection Period shall automatically terminate unless the parties agree otherwise in writing.**

191  ☐ **ALTERNATIVE INSPECTION PROCEDURES: OREF 058 PROFESSIONAL INSPECTION ADDENDUM**

192  ☐ **OTHER INSPECTION ADDENDUM** _____

Buyer Initials _____ Date 9/6/2021

Seller Initials _____ Date 9/7/2021  |  9:30

This form has been licensed for use solely by the named user below pursuant to a Forms License agreement with Oregon Real Estate Forms, LLC.
LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE OF BUYER AND/OR SELLER AND DATE
Copyright Oregon Real Estate Forms, LLC 2021          www.orefonline.com
No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC

**Exhibit 1**

Created by _____ in SkySlope® Forms          Case 16-34486-tmb13    Doc 60    Filed 09/16/21



193 ☐ **BUYER'S WAIVER OF INSPECTION CONTINGENCY:** Buyer represents to Seller and all Agents and Firms, Buyer is fully satisfied with the
194 condition of the Property and all elements and systems thereof and **knowingly and voluntarily** elects to waive the right to have any inspections
195 performed as a contingency to the Closing of the transaction. Buyer's election to waive the right of inspection is solely Buyer's decision and at
196 Buyer's own risk.

197 **11. LEAD-BASED PAINT CONTINGENCY PERIOD:** If the Property was constructed before 1978, on or promptly after the date the parties have signed and
198 accepted this Agreement, Seller shall deliver to Buyer OREF 021, the Lead-Based Paint Disclosure Addendum ("the Disclosure Addendum"), together with
199 the EPA Pamphlet entitled "Protect Your Family From Lead in Your Home" (the "Date of Delivery"). Unless waived by Buyer in writing in the Disclosure
200 Addendum, Buyer shall have ten (10) calendar days (or other mutually agreed upon period) commencing on the day following the Date of Delivery, within
201 which to conduct a lead-based paint assessment or inspection (the "LBP Contingency Period"). If lead-based paint and/or lead-based paint hazards are
202 identified in the Property by a certified inspector at any time before expiration of the LBP Contingency Period, Buyer may unconditionally cancel this
203 transaction by written notice to Seller ("Notice of Cancellation"). In such case, Buyer shall deliver a copy of any written reports or evaluations (collectively
204 "Reports") to Seller, *together with* the Notice of Cancellation, and thereafter receive a prompt refund of all earnest money deposits. **Buyer understands the**
205 **failure to deliver the Notice of Cancellation to Seller *together with* the Reports, on or before Midnight of the last day of the LBP Contingency Period**
206 **shall constitute acceptance of the condition of the Property as it relates to the presence of lead-based paint or lead-based paint hazards, and the**
207 **LBP Contingency Period shall automatically expire.**

208 **12.1 PRIVATE WELL:** Does the Property include a well that supplies or is intended to supply domestic water for household use? ☐ Yes ☑ No
209 If the property contains a private well, the **OREF 082 Private Well Addendum** will be attached to this Sale Agreement.

210 **12.2 SEPTIC/ONSITE SEWAGE SYSTEM:** Does the Property include a septic/onsite sewage system? ☐ Yes ☑ No  If the Property contains a
211 septic/onsite sewage system, the **OREF 081 Septic/Onsite Sewage System Addendum** will be attached to this Sale Agreement.

212 **13. SELLER'S PROPERTY DISCLOSURE STATEMENT:** Under Oregon law, Buyer has a right to revoke Buyer's offer (the "Revocation Right") unless
213 this transaction is exempt or Buyer has waived the Revocation Right. Buyer may exercise the Revocation Right only in writing and only within five (5) business
214 days after this Sale Agreement has been signed and accepted by both Buyer and Seller AND Seller has delivered to Buyer or Buyer's agent a complete
215 Seller's Property Disclosure Statement. However, Buyer may exercise the Revocation Right any time before receiving the Seller's Property Disclosure
216 Statement, so long as Buyer does so before Closing. This provision supersedes any contrary terms in the Seller's Property Disclosure Statement.

## SELLER REPRESENTATIONS

217 **14. SELLER REPRESENTATIONS:** Subject to other written disclosures made by Seller as a part of this transaction, Seller makes the
218 following representations to Buyer:
219 **(1)** The primary dwelling is connected to *(check all that apply):* ☑ a public sewer system; ☐ an on-site sewage system; ☑ a public
220 **water system;** ☐ a private well; ☐ other (e.g., surface springs, cistern, etc.).
221 **(2)** Seller has no knowledge of any hazardous substances in or about the Property other than substances (if any) contained in appliances
222 and equipment. Buyer acknowledges asbestos commonly exists in insulation, ceilings, floor coverings, and other areas in residential
223 housing and may exist in the Property.
224 **(3)** Seller knows of no material defects in or about the Property.
225 **(4)** All electrical wiring, heating, cooling, plumbing, irrigation equipment and systems, and the balance of the Property, including the
226 yard, will be in substantially their present condition at the time Buyer is entitled to possession.
227 **(5)** Seller has no notice of any liens or assessments to be levied against the Property.
228 **(6)** Seller has no notice from any governmental agency of any violation of law relating to the Property.
229 **(7)** Seller knows of no material discrepancies between visible lines of possession and use (such as existing fences, hedges, landscaping,
230 structures, driveways, and other such improvements) currently existing on the Property and the legal description of the Property.
231 **(8)** Seller will keep the Property fully insured through Closing.
232 **(9)** Seller agrees to promptly notify Buyer if, prior to Closing, Seller receives actual notice of any event or condition that could result in
233 making any previously disclosed material information relating to the Property substantially misleading or incorrect.
234 These representations are made to the best of Seller's knowledge. Seller may have made no investigations. Exceptions to items **(1)**
235 through **(9)** are:_____(For more exceptions see Addendum _____).

236 Buyer acknowledges the above representations are not warranties regarding the condition of the Property and are not a substitute for,
237 nor in lieu of, Buyer's own responsibility to conduct a thorough and complete independent investigation, including the use of
238 professionals, where appropriate, regarding all material matters bearing on the condition of the Property, its value and its suitability for
239 Buyer's intended use. Neither Buyer's nor Seller's Agents shall be responsible for conducting any inspection or investigation of any
240 aspects of the Property.

241 **15.1 SELLER ADVISORY: OREGON STATE TAX WITHHOLDING OBLIGATIONS:** Subject to certain exceptions, Escrow is required to withhold a portion
242 of Seller's proceeds if Seller is a non-resident individual or corporation as defined under Oregon law.  Buyer and Seller agree to cooperate with Escrow by

Buyer Initials _____ Date 9/6/2021                                                Seller Initials _____ 9/7/2021 | 9:30

This form has been licensed for use solely by the named user below pursuant to a Forms License agreement with Oregon Real Estate Forms, LLC.
**LINES WITH THIS SYMBOL ◄ REQUIRE A SIGNATURE OF BUYER AND/OR SELLER AND DATE**
Copyright Oregon Real Estate Forms, LLC  2021       www.orefonline.com
No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC

**Exhibit 1**
Created by [illegible] on SkySlope® Forms



243 executing and delivering any instrument, affidavit or statement as requested, and to perform any acts reasonable or necessary to carry out the provisions of
244 Oregon law.

245 **15.2 FIRPTA TAX WITHHOLDING REQUIREMENT:** Seller and Buyer are advised, during Closing, a Federal law, known as the Foreign
246 Investment in Real Property Tax Act of 1980 ("FIRPTA"), requires a buyer to withhold a portion of a seller's proceeds (up to 15% of the Purchase
247 Price) if the real property is located within the United States and the seller is a "foreign person" who does not qualify for an exemption. A "foreign
248 person" includes a nonresident alien individual, foreign corporation that has not made an election under Section 897(i) of the Internal Revenue
249 Code to be treated as a domestic corporation, foreign partnership, foreign trust, or a foreign estate, but it does not include a resident alien
250 individual.

251 If FIRPTA applies (i.e. Seller is a foreign person), even if there is an exemption, Buyer and Seller must so inform Escrow to determine the extent to
252 which Escrow can assist the parties in compliance with FIRPTA (see OREF 092 – FIRPTA Advisory). Seller's failure or refusal to comply with
253 FIRPTA requirements constitutes a material default under this Agreement.

254 If FIRPTA does not apply (i.e. Seller is not a foreign person), then Seller shall complete, sign, and deliver to Escrow a form of certification of non-
255 foreign status provided by escrow that complies with the requirements of 26 CFR § 1.1445-2 (the "Certificate") prior to Closing. If Seller fails or
256 refuses to complete, sign, and deliver the Certificate to Escrow prior to Closing, Seller understands and agrees Seller will be presumed to be a
257 foreign person in which case the terms of the above paragraph applies. Escrow is hereby instructed to act as a "Qualified Substitute" and provide
258 Buyer with a qualified substitute statement that complies with the requirements of 26 USC § 1445(b)(9) in lieu of the Certificate at Closing so
259 Seller's personal information is not disclosed to Buyer.

260 If Escrow is unable or unwilling to assist with the FIRPTA-related portion of the Closing (including, without limitation, providing the form Certificate
261 or acting as a Qualified Substitute), Buyer or Seller (as applicable) has the right, but not the obligation, to move Escrow to another Oregon licensed
262 escrow agent who is willing to assist with the FIRPTA-related portion of the Closing, in which case the parties' shall share equally in the cost of any
263 cancellation fees (if applicable). If, due to moving Escrow, this transaction cannot be closed by the Closing Date, the parties agree the Closing Date
264 will be extended for a reasonable period of time, not to exceed five (5) business days, to accommodate moving the transaction to the new escrow
265 agent.

266 Seller's and Buyer's Agents are not experts in FIRPTA and will not act as a transferor or transferee agent or "Qualified Substitute" for purposes
267 of the Withholding Requirement. If FIRPTA may apply in this transaction, Seller and Buyer should promptly consult their own experts familiar
268 with FIRPTA related the law and regulations. For further information, Seller and Buyer should go to: www.irs.gov.

269 **16. "AS-IS":** Except for Seller's express written agreements and written representations contained herein, and Seller's Property
270 **Disclosure, if any, Buyer is purchasing the Property "AS-IS," in its present condition and with all defects apparent or not apparent. This**
271 **provision shall not be construed to limit Buyer's right to implied new home warranties, if any, that may otherwise exist under Oregon**
272 **law.**

## MISCELLANEOUS ITEMS

273 **17. HOMEOWNER'S ASSOCIATION / TOWNHOME / PLANNED COMMUNITY:** Is the Property a townhome, in a planned community, or have a
274 Homeowner's Association? ☐ Yes ☑ No ☐ Unknown

275 If yes, OREF 024 Homeowner's Association / Townhome / Planned Community Addendum will be attached to this Sale Agreement.

276 **18. ALARM SYSTEM:** ☑ NONE ☐ OWNED ☐ LEASED ☐ UNKNOWN. If leased, Buyer ☐ will ☐ will not assume the lease at Closing.

277 **19. SMOKE/CARBON MONOXIDE DETECTORS:** Within _____ business days (fifteen [15] if not filled in) after the date Buyer and Seller have
278 **signed and accepted this Agreement, the dwelling will have one or more operating smoke alarms, smoke detectors, and carbon monoxide**
279 **detectors installed as required by law. Refer to ORS 479.260 for smoke detectors and ORS 476.725 for carbon monoxide alarms.**

280 **20. SMART HOME FEATURES:** Does the property contain any "Smart Home" features?
281 ☐ Yes ☑ No ☐ Unknown. If Yes, Seller to identify all Smart Home features in writing within three business days of the date this Agreement is signed and
282 accepted. In addition, Seller to provide necessary information for Buyer to access said Smart Home features at Closing, unless otherwise agreed in writing..

283 "Smart home features" refers to appliances, lighting and/or electronic devices that can be controlled remotely by the owner, often via a mobile app. Smart
284 home enabled devices can also operate in conjunction with other devices in the home and communicate information to other smart devices.

285 **21. WOODSTOVE/WOOD BURNING FIREPLACE INSERT:** Does the Property contain a woodstove or wood burning fireplace insert?
286 ☐ Yes ☑ No

287 If yes, is the woodstove/wood burning fireplace insert certified? ☐ Yes ☐ No ☐ Unknown. If "No" or "Unknown," Seller to provide Buyer with
288 **OREF 046 Woodstove/Wood Burning Fireplace Insert Addendum.**

289 **22. HOME WARRANTIES:** Home warranty plans may be purchased to help cover homeowner costs to repair/replace certain home systems and
290 appliances. (See specific plan for details.) Will a plan be purchased for Buyer as a part of this transaction? ☑ Yes ☐ No
291 If yes, identify plan and cost: **Select Platinum** $ **540.00** To be paid at Closing by: ☐ Buyer ☑ Seller

| Buyer Initials MB MB Date 9/6/2021 | | | | Seller Initials LMP / Date 9/7/2021 | 9:30 |

This form has been licensed for use solely by the named user below pursuant to a Forms License agreement with Oregon Real Estate Forms, LLC.
LINES WITH THIS SYMBOL ◄ REQUIRE A SIGNATURE OF BUYER AND/OR SELLER AND DATE
Copyright Oregon Real Estate Forms, LLC 2021     www.orefonline.com
No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC

**Exhibit 1**
Created by tberglund3 using SkySlope® Forms    Case 16-34486-tmb13    Doc 60    Filed 09/16/21

DocuSign Envelope ID: 07235333-26E4-44F2-AC75-0C445D1F101F

**OREF**
Oregon Real Estate Forms, LLC

Sale Agreement # **Bybee 01**

RESIDENTIAL REAL ESTATE SALE AGREEMENT
OREF 001 | Ver. 1.1 | Page 7 of 11

292 **23. ADDITIONAL PROVISIONS:** _____
293 _____
294 _____
295 _____ For additional provisions, see Addendum_____.

## CLOSING/ESCROW

296 **24. ESCROW:** This transaction shall be Closed at **Lawyers Title LO Shelley 503.968.1082** ("Escrow"), a neutral escrow
297 company licensed and located in the State of Oregon. Costs of Escrow shall be shared equally between Buyer and Seller, unless otherwise specifically
298 prohibited by the U.S. Department of Veterans Affairs (Federal VA). Unless otherwise provided herein, the parties agree as follows: Seller authorizes
299 Seller's Agent's Firm to order a preliminary title report and owner's title policy at Seller's expense and further authorizes Escrow to pay out of the
300 cash proceeds of sale the expense of furnishing such policy, Seller's recording fees, Seller's Closing costs, and any liens and encumbrances on the
301 Property payable by Seller on or before Closing. Buyer shall deposit with Escrow sufficient funds necessary to pay Buyer's recording fees, Buyer's
302 Closing costs, and Lender's fees, if any. Real estate fees, commissions or other compensation for professional real estate services provided by
303 Buyer's or Seller's Agents' Firms shall be paid at Closing in accordance with the listing agreement, buyer representation agreement or other written
304 agreement for compensation.

305 **25. PRORATIONS:** Prorates for rents, current year's taxes, interest on assumed obligations, and other prepaid expenses attributable to the
306 Property shall be as of: *(check one)* ☑ the Closing Date; ☐ date Buyer is entitled to possession

307 **26. EARNEST MONEY DEPOSIT(S) AND BUYER INSTRUCTIONS:** When this Sale Agreement is signed and accepted by Buyer and Seller, the following
308 instructions shall apply to the handling of Buyer's earnest money deposit in the sum of $ **10,000.00** ('the Deposit') .

309 *The* Deposit shall be payable *and* deposited within ___ (three [3] if not filled in) business days (the "Deposit Deadline") as follows *(check all that apply)*:

310 ☑ Directly with Escrow;

311 ☐ Directly into Buyer's Agent's Firm's client trust account and remain there until disbursement at Closing; and/or

312 ☐ Directly into Buyer's Agent's Firm's client trust account and thereafter deposit with Escrow/Title Company prior to Closing;

313 ☐ As follows: _____

314 Upon deposit of earnest money in accordance with this Agreement, Buyer shall take no steps to withdraw or authorize withdrawal of said funds, except in
315 accordance the terms and conditions of this Agreement. In the event Buyer attempts or succeeds in any such withdrawal of the earnest money deposit, it
316 shall be considered a breach of this Agreement and will result in a forfeit of the earnest money deposit and termination, at the option of the Seller, of the
317 Buyer's right to purchase.

318 Caution: The Deposit, payable by whatever method selected by Buyer above, shall be placed with Escrow or Buyer's Agent's Firm's Client Trust account no
319 later than 5:00 pm on the last day of the Deposit Deadline. The failure to do so may result in a breach of the Sale Agreement under Sections 27.2 and 27.3
320 (Earnest Money refund to Buyer/Earnest Money payment to Seller) , below.

321 If an additional Deposit ("Additional Deposit") is to be paid, it shall be handled in accordance with the above-selected instructions, or
322 (Describe):_____

323 *Once the Deposit, and Additional Deposit, if any, is/are placed with Escrow, Seller's and Buyer's Agents and Firms shall have no further responsibility to Buyer*
324 *or Seller regarding said funds.*

325 **27.1 EARNEST MONEY DEPOSIT INSTRUCTIONS TO ESCROW:** Escrow is hereby instructed by Buyer and Seller as follows: (1) Upon your receipt of a
326 copy of this Agreement marked "rejected" by Seller, or upon Seller's Agent Firm's written advice that the offer is "rejected" by Seller, you are to refund all
327 earnest money to Buyer; (2) Upon your receipt of a copy of this Agreement signed by Buyer and Seller, establish an escrow account and proceed with
328 Closing in accordance with the terms of this Agreement. If you determine the transaction cannot be Closed for any reason (whether or not there is a dispute
329 between Buyer and Seller), you are to hold all earnest money deposits until you receive written instructions from Buyer and Seller, or a final ruling from a court
330 or arbitrator, as to the disposition of such deposits.

331 **27.2 EARNEST MONEY REFUND TO BUYER:** If (1) Seller does not approve this Agreement; or (2) Seller signs and accepts this Agreement but
332 fails to furnish marketable title; or (3) Seller fails to complete this transaction in accordance with the material terms of this Agreement; or (4) any
333 condition which Buyer has made an express contingency in this Agreement (and has not been otherwise waived) fails through no fault of Buyer,
334 then all earnest money deposits shall be promptly refunded to Buyer. However, acceptance by Buyer of the refund shall not constitute a waiver of
335 other legal remedies available to Buyer.

336 **27.3 EARNEST MONEY PAYMENT TO SELLER:** If Seller signs and accepts this Agreement and title is marketable; and (1) Buyer has materially
337 misrepresented Buyer's financial status; or (2) Buyer's bank does not pay, when presented, any check given as earnest money or fails to tender

Buyer Initials ___/___ Date 9/6/2021    Seller Initials ___/___ Date 9/7/2021 | 9:30

This form has been licensed for use solely by the named user below pursuant to a Forms License agreement with Oregon Real Estate Forms, LLC.
LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE OF BUYER AND/OR SELLER AND DATE
Copyright Oregon Real Estate Forms, LLC 2021    www.orefonline.com
No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC    OREF 001 | Page 7 of 11

**Exhibit 1**
**Page 7 of 12**
Created by [illegible] SkySlope® Forms    Case 16-34486-tmb13    Doc 60    Filed 09/16/21



338 make a wire transfer for Buyer's earnest money; or (3) Buyer fails to complete this transaction in accordance with the material terms of this
339 Agreement, then Seller, at Seller's option, may terminate this Agreement and all earnest money paid or agreed to be paid shall be paid to Seller as
340 liquidated damages. The parties expressly agree Seller's economic and non-economic damages arising from Buyer's failure to close this transaction in
341 accordance with the terms of this Agreement would be difficult or impossible to ascertain with any certainty, and said earnest money deposit(s) identified
342 herein shall represent a binding liquidated sum, and it is a fair, reasonable and appropriate pre-estimate of Seller's damages, and is not a penalty. **It is the**
343 **intention of the parties, the Seller's sole remedy against Buyer for Buyer's failure to close this transaction in accordance with the**
344 **material terms of this Agreement shall be limited to the amount of earnest money paid or agreed to be paid herein.  Seller's right to**
345 **recover from Buyer any unpaid earnest money agreed to be paid herein shall be in accordance with the provisions of the Dispute**
346 **Resolution Sections below.**

347 **28.1 CLOSING:** Closing shall occur on a date mutually agreed upon between Buyer and Seller, but in no event later than 10/15/2021 ("the Closing
348 Deadline"). The terms "Closed", "Closing" or "Closing Date" shall mean when the deed or contract is recorded, and funds are available to Seller. Buyer and
349 Seller acknowledge for Closing to occur by the Closing Deadline, it may be necessary to execute documents and deposit funds in Escrow prior to that date.
350 *Caveat:  Section 7 requires three (3) days prior to the Closing Deadline if Escrow is to prepare a note and a deed of trust or mortgage.*

351 **28.2 THE CLOSING DISCLOSURE:** Pursuant to the federal TILA-RESPA Integrated Disclosure Rules ("TRID"), Buyer and Seller will each receive a
352 federally required document called a "Closing Disclosure", which, among other things, summarizes each party's closing costs. TRID requires the Closing
353 Disclosure must be received by a residential loan borrower at least three (3) business days prior to "consummation" of the transaction, which in most cases
354 in Oregon will be the date on which Buyer signs the loan documents. Under certain circumstances, a change to the Closing Disclosure late in the
355 transaction could result in a delay in Closing to comply with the three-business day rule. *Such a delay beyond the Closing Deadline could result in*
356 *termination of the transaction unless Seller and Buyer mutually agree to extend it.*

357 **28.3 NOTICE REGARDING TITLE INSURANCE COSTS:** The manner in which TRID requires title insurance costs to be disclosed differs from the actual
358 costs that may be charged to the parties under Oregon law. In such instances, at Closing, Escrow may issue a separate statement showing the actual costs
359 for an owner's policy of title insurance and, where applicable, the lender's policy of title insurance. *Seller and Buyer are encouraged to discuss this with*
360 *Escrow prior to Closing.*

361 **29. DEED:** Seller shall convey marketable title to the Property by statutory warranty deed (or good and sufficient personal representative's or
362 trustee's or similar legal fiduciary's deed, where applicable) free and clear of all liens of record, except property taxes that are a lien but not yet
363 payable, zoning ordinances, building and use restrictions, reservations in federal patents, easements of record that affect the Property, covenants,
364 conditions and restrictions of record, and those matters accepted by Buyer pursuant to Section 9 (Title Insurance), above. If Buyer's title will be held
365 in the name of more than one person, see Section 40 (Offer to Purchase), below regarding forms of co-ownership.

366 **30. POSSESSION:** Seller shall remove all personal property (including trash and debris) that is not a part of this transaction, and deliver
367 possession of the Property to Buyer *(select one)*:

368     (1) ☐ by 5:00 p.m. on Closing;

369     (2) ☐ by 12:01     ☐ a.m. ☑ p.m. 45   days after Closing;

370     (3) ☐ by _____ ☐ a.m. ☐ p.m. on the *(insert date)* _____

371 If a tenant(s) is currently in possession of the Property, will Buyer accept the tenant(s) at closing? *(check one)*:

372     ☑ No.  Seller shall have full responsibility for removal of tenant(s) prior to closing and, if applicable, tenant relocation costs.

373     ☐ Yes. If Yes, unless otherwise provided herein, all rents shall be prorated as of the closing date and tenant security deposits and any
374     other deposits held on behalf of the tenant(s) by Seller shall be transferred in full to Buyer at closing. All funds shall be handled through
375     escrow. Buyer and Seller are encouraged to attach the OREF 070 Investment Property Addendum to address additional items related to
376     the buyer accepting the tenant(s) at closing.

377 **31. SELLER POSSESSION BEFORE/AFTER CLOSING:** In the event Buyer and Seller agree, Seller will deliver possession before or after
378 Closing, **OREF 053 (Agreement to Occupy Before Closing)** or **OREF 054 (Agreement to Occupy After Closing)** will be attached to this Sale
379 Agreement.

## DEFINITIONS/INSTRUCTIONS

380 **32. DEFINITIONS/INSTRUCTIONS:**
381 (1) All references in this Sale Agreement to "Agent" and "Firm" shall refer to Buyer's and Seller's real estate agents licensed in the State of Oregon
382 and the respective real estate companies with which they are affiliated.
383 (2) Time is of the essence of this Agreement.

Buyer Initials JB/JB / _____ Date 9/6/2021

Seller Initials LMP / _____ Date 9/7/2021 | 9:30

This form has been licensed for use solely by the named user below pursuant to a Forms License agreement with Oregon Real Estate Forms, LLC.
LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE OF BUYER AND/OR SELLER AND DATE
Copyright Oregon Real Estate Forms, LLC  2021     www.orefonline.com
No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC

**Exhibit 1**

DocuSign Envelope ID: 07235333-26E4-44F2-AC75-0C445D1F101F

OREF
Oregon Real Estate Forms, LLC®

Sale Agreement # Bybee 01

RESIDENTIAL REAL ESTATE SALE AGREEMENT
OREF 001 | Ver. 1.1 | Page 9 of 11

384 (3) Except as provided in Section 9 (Title Insurance), above, all written notices or documents, required or permitted under this Agreement to be
385 delivered to Buyer or Seller may be delivered to their respective Agent with the same effect as if delivered to that Buyer or Seller. Upon opening of
386 this transaction with the title company identified at Section 24 (Escrow), above, Buyer, Seller, and their respective Agents, where applicable, shall
387 provide Escrow with their preferred means of notification (e.g., email or text address, facsimile number, or mailing or personal delivery address, or
388 other), which shall serve as the primary location for receipt of all notices or documents (hereinafter, "Contact Location").
389 (4) Agent(s) and Firm(s) identified in the Final Agency Acknowledgement Section, above are not parties to this Agreement but are subject to Section
390 39.3 (Mediation and Arbitration Involving Agents/Firms).
391 (5) A "business day" shall mean Monday through Friday, except recognized state and/or federal holidays.
392 (6) Any reference in the Agreement to a specific time shall refer to the time in the time zone where the Property is located.
393 (7) "Agreement" or "sale agreement" collectively shall be defined as this real estate sale agreement in its entirety and includes any written offer, counter offer,
394 or addendum in any form or language that adds to, amends or otherwise modifies this real estate sale agreement that has been signed and accepted in
395 accordance with the requirements of item 7 herein.
396 (8) The phrase "signed and accepted" in the printed text of this Sale Agreement, or any addendum or counter offer, however designated
397 (collectively, "the Agreement" or "the Sale Agreement"), shall mean the date and time either the Seller and/or Buyer has/have: (a) Signed their
398 acceptance of the Agreement received from the other party, or their Agents, _and_ (b) Transmitted it to the sending party, or their Agent, either by
399 manual delivery ("Manual Delivery"), facsimile, or electronic mail (collectively, "Electronic Transmission"). When the Agreement is "signed and
400 accepted" as defined herein, the Agreement becomes legally binding on Buyer and Seller, and neither has the ability to withdraw their offer or
401 counter offer, as the case may be.
402 (9) The sending of a signed acceptance of the Agreement via Electronic Transmission from one party, or their Agent, to the other party, or their
403 Agent, shall have the same effect as Manual Delivery of the signed original. If the parties intend to use any other method for transmitting a signed
404 offer or acceptance of the Agreement (such as regular mail, certified mail, or overnight delivery), they should so specify at Section 23 (Additional
405 Provisions) of this Sale Agreement.
406 (10) Time calculated in days after the date Buyer and Seller have signed and accepted this Agreement shall start on the first full business day after
407 the date they have signed and accepted it.
408 (11) This Agreement is binding upon the heirs, personal representatives, successors and assigns of Buyer and Seller. However, Buyer's rights
409 under this Agreement or in the Property are not assignable without prior written consent of Seller.
410 (12) This Agreement may be signed in multiple legible counterparts with the same legal effect as if all parties signed the same document.

411 (13) Excepting only the Lead-Based Paint Contingency Period identified in Section 11 (Lead Based Paint Contingency Period), unless a different
412 time is specified in the Agreement, all deadlines for performance, measured in business or calendar days, shall terminate as of 5:00 p.m. on the
413 last day of that deadline, however designated.
414 (14) Notice. As used in this Agreement and any document relating to this Agreement, "Notice" shall mean the providing of a true and accurate copy
415 of the document to the other party or their Agent. Notice shall be deemed delivered as of (a) the date and time the notice is sent by email or fax, (b)
416 the time the notice is personally delivered to either the Agent or the Agent's Office, or (c) three (3) calendar days after the date the notice is mailed.

417 **33. UTILITIES:** Seller shall pay all utility bills accrued to the date Buyer is entitled to possession. **Buyer shall pay Seller for heating fuel/propane**
418 **on premises, at Seller's supplier's rate on the possession date.** Payment shall be handled between Buyer and Seller outside of Escrow. Seller
419 shall not terminate or disconnect electric, gas, heating fuel/propane, or water utilities prior to the date buyer is entitled to possession unless parties
420 agreed otherwise in writing.

421 **34. APPROVED USES:** THE PROPERTY DESCRIBED IN THIS INSTRUMENT MAY NOT BE WITHIN A FIRE PROTECTION DISTRICT PROTECTING
422 STRUCTURES. THE PROPERTY IS SUBJECT TO LAND USE LAWS AND REGULATIONS WHICH, IN FARM OR FOREST ZONES, MAY NOT
423 AUTHORIZE CONSTRUCTION OR SITING OF A RESIDENCE AND WHICH LIMIT LAWSUITS AGAINST FARMING OR FOREST PRACTICES, AS
424 DEFINED IN ORS 30.930, IN ALL ZONES. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON TRANSFERRING FEE TITLE
425 SHOULD INQUIRE ABOUT THE PERSON'S RIGHTS, IF ANY, UNDER ORS 195.300, 195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11,
426 CHAPTER 424, OREGON LAWS 2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8,
427 OREGON LAWS 2010. BEFORE SIGNING OR ACCEPTING THIS INSTRUMENT, THE PERSON ACQUIRING FEE TITLE TO THE PROPERTY
428 SHOULD CHECK WITH THE APPROPRIATE CITY OR COUNTY PLANNING DEPARTMENT TO VERIFY THE UNIT OF LAND BEING TRANSFERRED
429 IS A LAWFULLY ESTABLISHED LOT OR PARCEL, AS DEFINED IN ORS 92.010 OR 215.010, TO VERIFY THE APPROVED USES OF THE LOT OR
430 PARCEL, TO VERIFY THE EXISTENCE OF FIRE PROTECTION FOR STRUCTURES AND TO INQUIRE ABOUT THE RIGHTS OF NEIGHBORING
431 PROPERTY OWNERS, IF ANY, UNDER ORS 195.300,195.301 AND 195.305 TO 195.336 AND SECTIONS 5 TO 11, CHAPTER 424, OREGON LAWS
432 2007, SECTIONS 2 TO 9 AND 17, CHAPTER 855, OREGON LAWS 2009, AND SECTIONS 2 TO 7, CHAPTER 8, OREGON LAWS 2010.

Buyer Initials _____ Date 9/6/2021          Seller Initials _____ Date 9/7/2021 | 9:3

This form has been licensed for use solely by the named user below pursuant to a Forms License agreement with Oregon Real Estate Forms, LLC.
LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE OF BUYER AND/OR SELLER AND DATE
Copyright Oregon Real Estate Forms, LLC 2021          www.orefonline.com
No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC
OREF 001 | Page 9 of 11

Exhibit 1
Page 9 of 12          Case 16-34486-tmb13     Doc 60     Filed 09/16/21
Created by DocuSign and SkySlope® Forms



433 **35. IRC 1031 EXCHANGE:** In the event Buyer or Seller elects to complete an IRC 1031 exchange in this transaction, the other party agrees to
434 cooperate with them and the accommodator, if any, in a manner necessary to complete the exchange, so long as it will not delay the Close of
435 escrow or cause additional expense or liability to the cooperating party. Unless otherwise provided herein, this provision shall not become a
436 contingency to the Closing of this transaction.

437 **36.1 LEVY OF ADDITIONAL PROPERTY TAXES:** The Property: *(check one)* ☐ is ☑ is not specially assessed for property taxes (e.g., farm,
438 forest or other) in a way resulting in the levy of additional taxes in the future. If it is specially assessed, Seller represents the Property is current as
439 to income or other conditions required to preserve its deferred tax status. If, as a result of Buyer's actions or the Closing of this transaction, the
440 Property either is disqualified from special use assessment or loses its deferred property tax status, unless otherwise specifically provided in this
441 Agreement, Buyer shall be responsible for and shall pay when due, any deferred and/or additional taxes and interest that may be levied against the
442 Property and shall hold Seller completely harmless therefrom. However, if as a result of Seller's actions prior to Closing, the Property either is
443 disqualified from its entitlement to special use assessment or loses its deferred property tax status, Buyer may, at Buyer's sole option, promptly
444 terminate this transaction and receive a refund of all deposits paid by Buyer in anticipation of Closing; or Close this transaction and hold Seller
445 responsible to pay into Escrow all deferred and/or additional taxes and interest levied or recaptured against the Property and hold Buyer completely
446 harmless therefrom. The preceding shall not be construed to limit Buyer's or Seller's available remedies or damages arising from a breach of this
447 Section 36.1 (Levy of Additional Property Taxes).

448 **36.2 HISTORIC PROPERTY DESIGNATION:** If the Property is or may be subject to a Historic Property local ordinance or is subject to or may
449 qualify for the Historic Property Special Property Tax Assessment under ORS 358.475 to 358.565, Seller shall provide **OREF 045A Historic**
450 **Property Addendum.**

## DISPUTE RESOLUTION

451 **37. FILING OF CLAIMS:** All claims, controversies and disputes between Seller, Buyer, Agents, and/or Firms, relating to the enforcement or
452 interpretation of this Sale Agreement (including those for rescission), as well as those relating to the validity or scope of the Sale Agreement, and all
453 matters concerning the jurisdiction of the arbitrator(s) and/or Arbitration Service of Portland, to hear and decide questions of arbitrability
454 (hereinafter collectively referred to as "Claims"), shall be exclusively resolved in accordance with the procedures set forth herein, which shall
455 survive Closing or earlier termination of this transaction. All Claims shall be governed exclusively by Oregon law, and venue shall be placed in the county
456 where the real property is situated. Filing a Claim for arbitration shall be treated the same as filing in court for purposes of meeting any applicable
457 statutes of limitation or statute of ultimate repose, and for purposes of filing a *lis pendens*. BY CONSENTING TO THE PROVISIONS HEREIN,
458 BUYER AND SELLER ACKNOWLEDGE THEY ARE GIVING UP THE CONSTITUTIONAL RIGHT TO HAVE CLAIMS TRIED BY A JUDGE OR
459 JURY IN STATE OR FEDERAL COURT, INCLUDING ALL ISSUES RELATING TO THE ARBITRABILITY OF SAID CLAIMS.

460 **38. EXCLUSIONS:** The following shall not constitute Claims: (1) Any proceeding to enforce or interpret a mortgage, trust deed, land sale contract
461 or recorded construction lien; (2) A forcible entry and detainer action (eviction); (3) If the matter is exclusively between REALTORS® and is
462 otherwise required to be resolved under the Professional Standards Ethics and Arbitration provisions of the National Association of REALTORS®;
463 (4) If the matter relates to a commission or fee with an Agent or Firm, and the written listing, service or fee agreement with Buyer or Seller contains
464 a mandatory mediation and/or arbitration provision; and (5) Filing in court for the issuance of provisional process described under the Oregon Rules
465 of Civil Procedure, provided, however, such filing shall not constitute a waiver of the right or duty to utilize the dispute resolution procedures
466 described herein for the adjudication of any Claims.

467 **39.1 SMALL CLAIMS BETWEEN BUYER AND SELLER:** All Claims between Buyer and Seller, within the jurisdiction of the Small Claims Court of
468 the county in which the property is located, shall be brought and decided there, in lieu of mediation, arbitration or litigation in any other forum.
469 Notwithstanding ORS 46.455(3), neither Buyer nor Seller shall have a right to request a jury trial and so remove the matter from the Small Claims
470 Department of the Circuit Court. A judgment in Small Claims Court is final and binding and there is no right of appeal.

471 **39.2 MEDIATION AND ARBITRATION BETWEEN BUYER AND SELLER:** If Buyer's and/or Seller's Agent is a member of the National
472 Association of REALTORS®, all Claims shall be submitted to mediation as offered by the local REALTOR® Association, if available. If mediation is
473 not available through the Agent's REALTOR® organization, then all Claims shall be submitted to mediation through the program administered by
474 Arbitration Service of Portland ("ASP"). All Claims that have not been resolved by mediation as described herein shall be submitted to final and
475 binding arbitration in accordance with the then-existing rules of ASP. The prevailing party in any arbitration between Buyer and Seller shall be
476 entitled to recovery of all reasonable attorney fees, filing fees, costs, disbursements, and mediator and arbitrator fees. Provided, however, a
477 prevailing party shall not be entitled to any award of attorney fees unless it is first established to the satisfaction of the arbitrator(s) (or judge, if
478 applicable) the prevailing party offered or agreed in writing to participate in mediation prior to, or promptly upon, the filing for arbitration.

479 **39.3 MEDIATION AND ARBITRATION INVOLVING AGENTS/FIRMS:** All Claims that include Agents or their Firms shall be resolved in
480 accordance with the mediation and arbitration process described in Section 39.2 (Mediation and Arbitration Between Buyer and Seller), above, and
481 if applicable, the prevailing party shall be entitled to an award of attorney fees, filing fees, costs, disbursements, and mediator and arbitrator fees,
482 as provided therein.

Buyer Initials _JVB_ _JMB_ Date _9/6/2021_    Seller Initials _EMP_ Date _9/7/2021_ | 9:30

This form has been licensed for use solely by the named user below pursuant to a Forms License agreement with Oregon Real Estate Forms, LLC.
LINES WITH THIS SYMBOL ▸ REQUIRE A SIGNATURE OF BUYER AND/OR SELLER AND DATE
Copyright Oregon Real Estate Forms, LLC 2021    www.orefonline.com
No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC    OREF 001 | Page 10 of 11

**Exhibit 1**
Page 10 of 12    Case 16-34486-tmb13    Doc 60    Filed 09/16/21

Created by Docentized using SkySlope® Forms



## SIGNATURE INSTRUCTIONS

483 **40. OFFER TO PURCHASE:** Buyer offers to purchase the Property upon the terms and conditions set forth in this Agreement. Buyer
484 acknowledges receipt of a completely filled in copy of this Agreement which Buyer has fully read and understands. Buyer acknowledges,
485 Buyer has not relied upon any oral or written statements made by Seller or any Agents that are not expressly contained in this
486 Agreement. Neither Seller nor any Agent(s) warrant the square footage of any structure or the size of any land being purchased. If square
487 footage or land size is a material consideration, all structures and land should be measured by Buyer prior to signing or should be made
488 an express contingency in this Agreement.

489 Deed or contract shall be prepared in the name of <u>Jerry Odell Bybee and Juanita Anne Bybee, or as buyers shall specify</u>.

490 **Co-Ownership Note:** Buyer should secure advice from an expert or attorney regarding different forms of co-ownership and rights of survivorship.
491 Agents are not qualified to provide advice on these issues. Once the form of co-ownership is determined, Buyer should promptly notify Escrow.

492 This offer shall automatically expire on (insert date) <u>09/07/2021</u> at <u>8:00</u> ☐ a.m. ☒ p.m., (the "Offer Deadline"), if not accepted by
493 that time, Buyer may withdraw this offer before the Offer Deadline any time prior to Seller's transmission of signed acceptance. This offer may be
494 accepted by Seller only in writing.

495 Buyer _Jerry Odell Bybee_ _____ Date 9/6/2021 _____ _____ a.m. _____ p.m.

496 Buyer _Juanita Anne Bybee_ _____ Date 9/6/2021 _____ _____ a.m. _____ p.m.

497 This offer was delivered/transmitted to Seller for signature on (insert date) 9/7/2021 | 8:58 PM EDT at_____ a.m._____ p.m.

498 By _Matt Soukup_ _____ (Agent(s) presenting offer).

499 **41. AGREEMENT TO SELL / ACKNOWLEDGMENTS / DISPOSITION OF EARNEST MONEY:** Seller <u>accepts</u> Buyer's offer. Seller
500 acknowledges receipt of a completely filled-in copy of this Agreement, which Seller has fully read and understands. Seller
501 acknowledges, Seller has not relied upon any oral or written statements of Buyer or of any Agent(s) that are not expressly contained in
502 this Agreement.

503 Seller_____ Date _____ _____ a.m. _____ p.m. ⬅

504 Seller_____ Date _____ _____ a.m. _____ p.m. ⬅

505 **Note:** If delivery/transmission occurs after the Offer Deadline identified at Section 40 (Offer to Purchase), above, it will not
506 become binding upon Seller and Buyer unless the parties agree to extend said Deadline by an Addendum, Counter offer, or other
507 writing, jointly signed by the parties. The parties' failure to do so shall be treated as a rejection under Section 42 (Seller's
508 Rejection), below, and this transaction shall be automatically terminated.

509 **42. SELLER'S REJECTION/COUNTER OFFER (select only one):**

510 ☐ Seller does not accept the above offer, but makes the attached counter offer.
511 ☐ Seller rejects Buyer's offer.

512 Seller_____ Date _____ _____ a.m. _____ p.m. ⬅

513 Seller_____ Date _____ _____ a.m. _____ p.m. ⬅

514 <u>**NO CHANGES OR ALTERATIONS ARE PERMITTED TO ANY PORTION OF THE PRE-PRINTED FORMAT OR TEXT OF THIS FORM. ANY**</u>
515 <u>**SUCH PROPOSED CHANGES OR ALTERATIONS SHOULD BE MADE ON A SEPARATE DOCUMENT. CHANGES BY BUYER'S OR**</u>
516 <u>**SELLER'S AGENT TO THE TERMS OR PROVISIONS ABOVE BUYER'S SIGNATURE SHOULD ALSO BE ON A SEPARATE DOCUMENT.**</u>

Buyer Initials _JOB/JB_ Date _9/6/2021_              Seller Initials _JMP_ Date _9/7/2021 | 9:30_

This form has been licensed for use solely by the named user below pursuant to a Forms License agreement with Oregon Real Estate Forms, LLC.
LINES WITH THIS SYMBOL ⬅ REQUIRE A SIGNATURE OF BUYER OR SELLER AND DATE
Copyright Oregon Real Estate Forms, LLC 2021       www.orefonline.com
No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC       OREF 001 | Page 11 of 11

**Exhibit 1**
Page 11 of 12

Created by

Case 16-34486-tmb13    Doc 60    Filed 09/16/21



Sale Agreement # **Bybee 01**

## SELLER'S COUNTER OFFER No. 1

1  This is a counter offer to ☒ Sale Agreement or ☐ Buyer's Counter Offer
2  Seller: __Kristi M Polukeev__
3  Buyer: __Jerry Odell Bybee, Juanita Anne Bybee__
4  The real property described as: __8815 SW Oleson Rd, Portland, OR 97223-6831__

5  **AGREEMENT TO SELL:** Seller agrees to sell the real and personal property upon the terms and conditions set forth in the Sale Agreement and
6  subsequent counter offers where applicable, **except** as modified as follows: _____
7  __Price to be $825,000.__
8  __Drapes/curtains not included in transaction__
9  __All other terms and conditions remain the same__
10 _____
11 _____
12 _____
13 _____
14 _____
15 _____
16 _____
17 _____
18 _____
19 _____
20 For additional provisions, see Addendum _____

21 **All remaining terms and conditions of the Sale Agreement (and other counter offer(s), where applicable), not otherwise modified, are**
22 **approved and accepted by Seller. Time is of the essence.** This Seller's Counter Offer shall automatically expire on __September 8, 2021__
23 at __7__ ☐ a.m. ☒ p.m. ("the Counter Offer Deadline"), if not accepted within that time This Seller's Counter Offer may be
24 accepted by Buyer only in writing. However, Seller may withdraw this counter offer before the Offer Deadline any time prior to Buyer's
25 transmission of signed acceptance.

26 Seller acknowledges receipt of a completely filled in copy of Buyer's Offer and Seller's Counter Offer, and all subsequent counter offers
27 where applicable, which Seller has fully read and understands. Seller acknowledges Seller has not relied on any oral or written
28 statements of any Buyer or of any agent(s) that are not expressly contained in the Sale Agreement as amended.
29 Seller Signature _Kristi M Polukeev_____ Date _9/7/2021 | 9:30 PM EDT_____ a.m. ___ p.m. ←
      Kristi M Polukeev
      D16B58604D8E4A6...

30 Seller Signature _____ Date _____ ___ a.m. ___ p.m. ←

31 **BUYER'S RESPONSE (select only one):**
32 ☒ Buyer **accepts** Seller's Counter Offer.
33 ☐ Buyer **does not accept** Seller's Counter Offer AND submits the attached Buyer's Counter Offer.
34 ☐ Buyer **rejects** Seller's Counter Offer.

35 Buyer acknowledges receipt of signed copies of the Sale Agreement and all subsequent counter offers including this Seller's Counter
36 Offer, where applicable, which Buyer has fully read and understands.
37 Buyer Signature _Jerry Odell Bybee_____ Date _9/7/2021_____ ___ a.m. ___ p.m. ←
      DocuSigned by:
      316B9D3C05D48A0...  Jerry Odell Bybee

38 Buyer Signature _Juanita Anne Bybee_____ Date _9/7/2021_____ ___ a.m. ___ p.m. ←
      F26F9EEC2D9B4A2...  Juanita Anne Bybee

39 **Note:** If delivery/transmission occurs after the Counter Offer Deadline identified above, it will not become binding upon Seller and
40 Buyer unless the parties agree to extend said Deadline by an Addendum, Counteroffer, or other writing, jointly signed by the
41 parties. The parties' failure to do so shall be treated as a rejection under Buyers Response, above, and this transaction shall be
42 automatically terminated.

43 Seller's Agent __Matt Soukup__          Buyer's Agent __Tracy Davis-Sharp__

**This form has been licensed for use solely by Matt Soukup pursuant to a Forms License Agreement with Oregon Real Estate Forms, LLC.**

LINES WITH THIS SYMBOL ← REQUIRE A SIGNATURE AND DATE
Copyright Oregon Real Estate Forms, LLC 2020          www.orefonline.com                                    OREF 003
No portion may be reproduced without express permission of Oregon Real Estate Forms, LLC          Page 1 of 1

Keller Williams Realty Portland Premiere, 7504 Bridgeport Rd, Portland, OR 97224          Phone: (503) 515-5044          Fax: (503) 597-5010          8815 SW Oleson
Matt Soukup          Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

**Exhibit 1**
**Page 12 of 12**          Case 16-34486-tmb13    Doc 60    Filed 09/16/21



of Oregon, LLC

## PRELIMINARY REPORT

In response to the application for a policy of title insurance referenced herein Lawyers Title of Oregon, LLC hereby reports that it is prepared to issue, or cause to be issued, as of the specified date, a policy or policies of title insurance describing the land and the estate or interest hereinafter set forth, insuring against loss which may be sustained by reason of any defect, lien or encumbrance not shown or referred to as an exception herein or not excluded from coverage pursuant to the printed Schedules, Conditions and Stipulations or Conditions of said policy forms.

The printed Exceptions and Exclusions from the coverage of said policy or policies are set forth in Exhibit One. Copies of the policy forms should be read. They are available from the office which issued this report.

This report (and any supplements or amendments hereto) is issued solely for the purpose of facilitating the issuance of a policy of title insurance and no liability is assumed hereby.

The policy(s) of title insurance to be issued hereunder will be policy(s) of Fidelity National Title Insurance Company, a/an Florida corporation.

**Please read the exceptions shown or referred to herein and the Exceptions and Exclusions set forth in Exhibit One of this report carefully. The Exceptions and Exclusions are meant to provide you with notice of matters which are not covered under the terms of the title insurance policy and should be carefully considered.**

**It is important to note that this preliminary report is not a written representation as to the condition of title and may not list all liens, defects and encumbrances affecting title to the land.**

This preliminary report is for the exclusive use of the parties to the contemplated transaction, and the Company does not have any liability to any third parties nor any liability until the full premium is paid and a policy is issued. Until all necessary documents are placed of record, the Company reserves the right to amend or supplement this preliminary report.

*Countersigned*

_____



## LawyersTitle
of Oregon, LLC

6000 Meadows Rd, Ste 100, Lake Oswego, OR 97035
(503)968-1082  FAX (503)968-1852

## PRELIMINARY REPORT

**ESCROW OFFICER:** Shelley Williams        **ORDER NO.:** 872103288
shelleywilliams@ltic.com
(503)968-1082

**TITLE OFFICER:**     Jason Parkrosz

**TO:** Lawyers Title of Oregon, LLC
     6000 Meadows Rd, Ste 100
     Lake Oswego, OR 97035

**ESCROW LICENSE NO.:** 201011109
**OWNER/SELLER:**     Kristi Polukeev and Vladimir A. Polukeev
**BUYER/BORROWER:**    Jerry Odell Bybee and Juanita Anne Bybee
**PROPERTY ADDRESS:** 8815 SW Oleson Road, Portland, OR 97223

**EFFECTIVE DATE:  September 3, 2021, 08:00 AM**

1.  THE POLICY AND ENDORSEMENTS TO BE ISSUED AND THE RELATED CHARGES ARE:

| | AMOUNT | PREMIUM |
|---|---|---|
| ALTA Owner's Policy 2006 | $ 825,000.00 | $ 1,838.00 |
| **Owner's Standard** | | |
| ALTA Loan Policy 2006 | $ 720,000.00 | $ 604.00 |
| **Extended Lender's** | | |
| OTIRO 209.10-06 - Restrictions, Encroachments, Minerals - Current Violations (ALTA 9.10-06) | | $ 100.00 |
| OTIRO 222-06 - Location (ALTA 22-06) | | $ 0.00 |
| OTIRO 208.1-06 - Environmental Protection Lien (ALTA 8.1-06) | | $ 0.00 |

2.  THE ESTATE OR INTEREST IN THE LAND HEREINAFTER DESCRIBED OR REFERRED TO COVERED BY THIS REPORT IS:

    A Fee

3.  TITLE TO SAID ESTATE OR INTEREST AT THE DATE HEREOF IS <u>VESTED IN:</u>

    Kristi M. Polukeev and Vladimir A. Polukeev

4.  THE LAND REFERRED TO IN THIS REPORT IS SITUATED IN THE COUNTY OF WASHINGTON, STATE OF OREGON, AND IS DESCRIBED AS FOLLOWS:

    SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

# EXHIBIT "A"
## Legal Description

Beginning at the Northwest corner of the Southeast one-quarter, Northeast one-quarter of Section 26, Township 1 South, Range 1 West, of the Willamette Meridian, in the County of Washington and State of Oregon; thence South 89°38' East along the North line of said Southeast one-quarter, Northeast one-quarter of Section 26, a distance of 296.76 feet to an iron pipe; thence South 471.60 feet to an iron pipe, which iron pipe is the true point of beginning of the herein described tract, and the Southwest corner of that certain tract conveyed to Howard T. Multhauf, et ux, by deed recorded January 5, 1943 in Book 214, No. 9325; thence from the above described true point of beginning South 89°43' East 138.93 feet along said Multhauf Tract to an iron pipe, which is the Northwest corner of that certain tract conveyed to Jack E. Hannula, et ux, by deed recorded July 26, 1943 in Book 223, Page 515; thence South 188.02 feet along said Hannula Tract to an iron pipe on the Northerly boundary of the County Road; thence continuing South 35.42 feet to a point in the center of said County Road; thence South 57°52' West along the center of said County Road 164.06 feet to a point; thence North 35.42 feet to an iron pipe on the Northerly boundary of said County Road; thence continuing North 275.96 feet to the place of beginning.

**AS OF THE DATE OF THIS REPORT, ITEMS TO BE CONSIDERED AND EXCEPTIONS TO COVERAGE IN ADDITION TO THE PRINTED EXCEPTIONS AND EXCLUSIONS IN THE POLICY FORM WOULD BE AS FOLLOWS:**

### GENERAL EXCEPTIONS:

1.  Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.

2.  Any facts, rights, interests or claims, which are not shown by the Public Records but which could be ascertained by an inspection of the Land or by making inquiry of persons in possession thereof.

3.  Easements, or claims of easement, which are not shown by the Public Records; reservations or exceptions in patents or in Acts authorizing the issuance thereof; water rights, claims or title to water.

4.  Any encroachment (of existing improvements located on the Land onto adjoining land or of existing improvements located on adjoining land onto the subject Land), encumbrance, violation, variation or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the subject Land.

5.  Any lien or right to a lien for services, labor, material, equipment rental or workers compensation heretofore or hereafter furnished, imposed by law and not shown by the Public Records.

### SPECIFIC ITEMS AND EXCEPTIONS:

6.  Property taxes in an undetermined amount, which are a lien but not yet payable, including any assessments collected with taxes to be levied for the fiscal year 2021-2022.

7.  Rights of the public to any portion of the Land lying within the area commonly known as SW Oleson Road.

8.  Access Easement

    Recording Date:      August 13, 1993
    Recording No.:       93-066378

    and Re-Recording Date: February 2, 1994
    and Re-Recording No:   94-010909
    Reason:                Change the Easement Grantee

9.  Road Maintenance Agreement

    Recording Date:      February 2, 1994
    Recording No.:       94-010910

    Addendum to Road Maintenance Agreement

    Recording Date:      February 18, 2014
    Recording No.:       2014-009152

10. A deed of trust to secure an indebtedness in the amount shown below,

Amount: $363,000.00
Dated: February 8, 2006
Trustor/Grantor: Kristi M. Polukeev and Vladimir A. Polukeev
Trustee: Ticor Title Insurance Company
Beneficiary: ABN Amro Mortgage Group, Inc.
Loan No.: 652015726
Recording Date: February 13, 2006
Recording No.: 2006-016812

A substitution of trustee under said deed of trust which names, as the substituted trustee, the following

Trustee: Shapiro & Sutherland, LLC
Recording Date: July 8, 2016
Recording No: 2016-052742

By various assignments, the beneficial interest thereunder is now held of record in:

Assignee: US Bank Trust National Association as Trustee for Igloo Series IV Trust
Loan No.: Not Disclosed
Recording Date: July 23, 2021
Recording No.: 2021-081491

11. A contract of sale by and between the parties named below

Dated: November 28, 2016
Vendor: Vladimir A. Polukeev
Vendee: Kristi M. Polukeev
Recording Date: November 28, 2016
Recording No: 2016-097999

Addendum T of Real Estate Contract, including the terms and provisions thereof

Recording Date: August 23, 2021
Recording No.: 2021-091198

12. Any matters arising out of or by virtue of that certain bankruptcy case:

Name of Debtor: Kristi Maria Polukeev
Date of Filing: November 28, 2016
U. S. District Court: Western
State: Oregon
Case No.: 16-34486
Chapter: 13
Attorney: Douglas R. Ricks
Attorney's Address: 319 SW Washington St #520, Portland OR 97204
Attorney's Phone No: 503-241-4869
Name of Trustee: Wayne Godare

13.    Facts, rights, interests or claims which are not shown by the public records but which could be ascertained by an inspection of the Land or by making inquiry of persons in possession thereof.

To remove this item, the Company will require an affidavit and indemnity on a form supplied by the Company.

14.    Any lien or right to a lien for services, labor, material, equipment rental or workers compensation heretofore or hereafter furnished, imposed by law and not shown by the public records.

To remove this item, the Company will require an affidavit and indemnity on a form supplied by the Company.

**ADDITIONAL REQUIREMENTS/NOTES:**

A.    Note: Property taxes for the fiscal year shown below are paid in full.

| | |
|---|---|
| Fiscal Year: | 2020-2021 |
| Amount: | $5,257.01 |
| Levy Code: | 051.50 |
| Account No.: | R233349 |
| Map No.: | 1S126AD02800 |

Prior to close of escrow, please contact the Tax Collector's Office to confirm all amounts owing, including current fiscal year taxes, supplemental taxes, escaped assessments and any delinquencies.

B.    In addition to the standard policy exceptions, the exceptions enumerated above shall appear on the final 2006 ALTA Policy unless removed prior to issuance.

C.    Note: There are no matters against the party(ies) shown below which would appear as exceptions to coverage in a title insurance product:

Parties:  Jerry Odell Bybee and Juanita Anne Bybee

D.    Notice: Please be aware that due to the conflict between federal and state laws concerning the cultivation, distribution, manufacture or sale of marijuana, the Company is not able to close or insure any transaction involving Land that is associated with these activities.

E.    Note:  There are NO conveyances affecting said Land recorded within 24 months of the date of this report.

F.    Note:  No utility search has been made or will be made for water, sewer or storm drainage charges unless the City/Service District claims them as liens (i.e. foreclosable) and reflects them on its lien docket as of the date of closing. Buyers should check with the appropriate city bureau or water service district and obtain a billing cutoff. Such charges must be adjusted outside of escrow.

G.    Washington County imposes a transfer tax of $1.00 per $1,000 (or fraction thereof) of the selling price in a real estate transfer, unless the county approves an exemption application.  Exemption criteria and applications are available at the county's website, see: http://www.co.washington.or.us/AssessmentTaxation/Recording/TransferTaxExemption/index.cfm.

H.   Recording Charge (Per Document) is the following:

| County | First Page | Each Additional Page |
|--------|-----------|---------------------|
| Multnomah | $86.00 | $5.00 |
| Washington | $81.00 | $5.00 |
| Clackamas | $93.00 | $5.00 |

Note: When possible the company will record electronically.  An additional charge of $5.00 applies to each document that is recorded electronically.

Note: Please send any documents for recording to the following address:
Portland Title Group
Attn: Recorder
1433 SW 6th Ave.
Portland, OR. 97201

I.   Note:  Effective January 1, 2008, Oregon law (ORS 314.258) mandates withholding of Oregon income taxes from sellers who do not continue to be Oregon residents or qualify for an exemption. Please contact your Escrow Closer for further information.

J.   THE FOLLOWING NOTICE IS REQUIRED BY STATE LAW: YOU WILL BE REVIEWING, APPROVING AND SIGNING IMPORTANT DOCUMENTS AT CLOSING. LEGAL CONSEQUENCES FOLLOW FROM THE SELECTION AND USE OF THESE DOCUMENTS. YOU MAY CONSULT AN ATTORNEY ABOUT THESE DOCUMENTS. YOU SHOULD CONSULT AN ATTORNEY IF YOU HAVE QUESTIONS OR CONCERNS ABOUT THE TRANSACTION OR ABOUT THE DOCUMENTS. IF YOU WISH TO REVIEW TRANSACTION DOCUMENTS THAT YOU HAVE NOT SEEN, PLEASE CONTACT THE ESCROW AGENT.

K.   Note:  This map/plat is being furnished as an aid in locating the herein described Land in relation to adjoining streets, natural boundaries and other land. Except to the extent a policy of title insurance is expressly modified by endorsement, if any, the Company does not insure dimensions, distances or acreage shown thereon.

L.   NOTE: IMPORTANT INFORMATION REGARDING PROPERTY TAX PAYMENTS

| | |
|---|---|
| Fiscal Year: | July 1st through June 30th |
| Taxes become a lien on real property, but are not yet payable: | July 1st |
| Taxes become certified and payable (approximately on this date): | October 15th |
| First one third payment of taxes is due: | November 15th |
| Second one third payment of taxes is due: | February 15th |
| Final payment of taxes is due: | May 15th |

Discounts:   If two thirds are paid by November 15th, a 2% discount will apply.
If the full amount of the taxes are paid by November 15th, a 3% discount will apply.

Interest:   Interest accrues as of the 15th of each month based on any amount that is unpaid by the due date. No interest is charged if the minimum amount is paid according to the above mentioned payment schedule.

---

## EXHIBIT ONE

### 2006 AMERICAN LAND TITLE ASSOCIATION LOAN POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses that arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning) restricting, regulating, prohibiting or relating to
   (i) the occupancy, use, or enjoyment of the Land;
   (ii) the character, dimensions or location of any improvement erected on the land;
   (iii) the subdivision of land; or
   (iv) environmental protection;
   or the effect of any violation of these laws, ordinances or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed or agreed to by the Insured Claimant;
   (b) not known to the Company, not recorded in the Public Records at Date of Policy, but known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;

(c) resulting in no loss or damage to the Insured Claimant;
(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 11, 13, or 14); or
(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Insured Mortgage.
4. Unenforceability of the lien of the Insured Mortgage because of the inability or failure of an Insured to comply with the applicable doing-business laws of the state where the Land is situated.
5. Invalidity or unenforceability in whole or in part of the lien of the Insured Mortgage that arises out of the transaction evidenced by the Insured Mortgage and is based upon usury or any consumer credit protection or truth-in-lending law.
6. Any claim, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
   (a) a fraudulent conveyance or fraudulent transfer, or
   (b) a preferential transfer for any reason not stated in the Covered Risk 13(b) of this policy.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the Insured Mortgage in the Public Records. This Exclusion does not modify or limit the coverage provided under Covered Risk 11(b).

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage.

### SCHEDULE B - GENERAL EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Facts, rights, interests or claims which are not shown by the Public Records but which could be ascertained by an inspection of the Land or by making inquiry of persons in possession thereof.
3. Easements, or claims of easement, not shown by the Public Records; reservations or exceptions in patents or in Acts authorizing the issuance thereof, water rights, claims or title to water.

4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.
5. Any lien for services, labor or material heretofore or hereafter furnished, or for contributions due to the State of Oregon for unemployment compensation or worker's compensation, imposed by law and not shown by the Public Records.

### 2006 AMERICAN LAND TITLE ASSOCIATION OWNER'S POLICY (06-17-06)
### EXCLUSIONS FROM COVERAGE

The following matters are expressly excluded from the coverage of this policy and the Company will not pay loss or damage, costs, attorneys' fees or expenses that arise by reason of:

1. (a) Any law, ordinance or governmental regulation (including but not limited to building and zoning) restricting, regulating, prohibiting or relating to
   (i) the occupancy, use, or enjoyment of the Land;
   (ii) the character, dimensions or location of any improvement erected on the land;
   (iii) the subdivision of land; or
   (iv) environmental protection;
   or the effect of any violation of these laws, ordinances or governmental regulations. This Exclusion 1(a) does not modify or limit the coverage provided under Covered Risk 5.
   (b) Any governmental police power. This Exclusion 1(b) does not modify or limit the coverage provided under Covered Risk 6.
2. Rights of eminent domain. This Exclusion does not modify or limit the coverage provided under Covered Risk 7 or 8.
3. Defects, liens, encumbrances, adverse claims, or other matters
   (a) created, suffered, assumed or agreed to by the Insured Claimant;

(b) not known to the Company, not recorded in the Public Records at Date of Policy, but known to the Insured Claimant and not disclosed in writing to the Company by the Insured Claimant prior to the date the Insured Claimant became an Insured under this policy;
(c) resulting in no loss or damage to the Insured Claimant;
(d) attaching or created subsequent to Date of Policy (however, this does not modify or limit the coverage provided under Covered Risk 9 and 10); or
(e) resulting in loss or damage that would not have been sustained if the Insured Claimant had paid value for the Title.
4. Any claim, by reason of the operation of federal bankruptcy, state insolvency or similar creditors' rights laws, that the transaction creating the lien of the Insured Mortgage, is
   (a) a fraudulent conveyance or fraudulent transfer, or
   (b) a preferential transfer for any reason not stated in the Covered Risk 9 of this policy.
7. Any lien on the Title for real estate taxes or assessments imposed by governmental authority and created or attaching between Date of Policy and the date of recording of the deed or other instrument of transfer in the Public Records that vests Title as shown in Schedule A.

The above policy form may be issued to afford either Standard Coverage or Extended Coverage. In addition to the above Exclusions from Coverage, the Exceptions from Coverage in a Standard Coverage policy will also include the following Exceptions from Coverage.

### SCHEDULE B - GENERAL EXCEPTIONS FROM COVERAGE

This policy does not insure against loss or damage (and the Company will not pay costs, attorneys' fees or expenses) which arise by reason of:

1. Taxes or assessments which are not shown as existing liens by the records of any taxing authority that levies taxes or assessments on real property or by the Public Records; proceedings by a public agency which may result in taxes or assessments, or notices of such proceedings, whether or not shown by the records of such agency or by the Public Records.
2. Facts, rights, interests or claims which are not shown by the Public Records but which could be ascertained by an inspection of the Land or by making inquiry of persons in possession thereof.
3. Easements, or claims of easement, not shown by the Public Records; reservations or exceptions in patents or in Acts authorizing the issuance thereof, water rights, claims or title to water.

4. Any encroachment, encumbrance, violation, variation, or adverse circumstance affecting the Title that would be disclosed by an accurate and complete land survey of the Land. The term "encroachment" includes encroachments of existing improvements located on the Land onto adjoining land, and encroachments onto the Land of existing improvements located on adjoining land.
5. Any lien for services, labor or material heretofore or hereafter furnished, or for contributions due to the State of Oregon for unemployment compensation or worker's compensation, imposed by law and not shown by the Public Records.

Preliminary Report (Exhibit One)

Printed: 09.15.21 @ 10:43 AM
OR—SPS1-21-872103288

**Exhibit 2**
**Page 8 of 12**

Case 16-34486-tmb13   Doc 60   Filed 09/16/21

# WIRE SAFE™ | Inquire before you wire!

# WIRE FRAUD ALERT

This Notice is not intended to provide legal or professional advice.
If you have any questions, please consult with a lawyer.

All parties to a real estate transaction are targets for wire fraud and many have lost hundreds of thousands of dollars because they simply relied on the wire instructions received via email, without further verification. **If funds are to be wired in conjunction with this real estate transaction, we strongly recommend verbal verification of wire instructions through a known, trusted phone number prior to sending funds.**

In addition, the following non-exclusive self-protection strategies are recommended to minimize exposure to possible wire fraud.

- **NEVER RELY** on emails purporting to change wire instructions. Parties to a transaction rarely change wire instructions in the course of a transaction.

- **ALWAYS VERIFY** wire instructions, specifically the ABA routing number and account number, by calling the party who sent the instructions to you. DO NOT use the phone number provided in the email containing the instructions, use phone numbers you have called before or can otherwise verify. **Obtain the number of relevant parties to the transaction as soon as an escrow account is opened.** DO NOT send an email to verify as the email address may be incorrect or the email may be intercepted by the fraudster.

- **USE COMPLEX EMAIL PASSWORDS** that employ a combination of mixed case, numbers, and symbols. Make your passwords greater than eight (8) characters. Also, change your password often and do NOT reuse the same password for other online accounts.

- **USE MULTI-FACTOR AUTHENTICATION** for email accounts. Your email provider or IT staff may have specific instructions on how to implement this feature.

For more information on wire-fraud scams or to report an incident, please refer to the following links:

*Federal Bureau of Investigation:*
*http://www.fbi.gov*

*Internet Crime Complaint Center:*
*http://www.ic3.gov*

TM and © Fidelity National Financial, Inc. and/or an affiliate. All rights reserved

**Exhibit 2**
**Page 9 of 12**          Case 16-34486-tmb13     Doc 60     Filed 09/16/21

**FIDELITY NATIONAL FINANCIAL**
**PRIVACY NOTICE**

Effective January 1, 2021

Fidelity National Financial, Inc. and its majority-owned subsidiary companies (collectively, "FNF," "our," or "we") respect and are committed to protecting your privacy. This Privacy Notice explains how we collect, use, and protect personal information, when and to whom we disclose such information, and the choices you have about the use and disclosure of that information.

A limited number of FNF subsidiaries have their own privacy notices. If a subsidiary has its own privacy notice, the privacy notice will be available on the subsidiary's website and this Privacy Notice does not apply.

## Collection of Personal Information

FNF may collect the following categories of Personal Information:

- contact information (*e.g.*, name, address, phone number, email address);
- demographic information (*e.g.*, date of birth, gender, marital status);
- identity information (*e.g.* Social Security Number, driver's license, passport, or other government ID number);
- financial account information (*e.g.* loan or bank account information); and
- other personal information necessary to provide products or services to you.

We may collect Personal Information about you from:

- information we receive from you or your agent;
- information about your transactions with FNF, our affiliates, or others; and
- information we receive from consumer reporting agencies and/or governmental entities, either directly from these entities or through others.

## Collection of Browsing Information

FNF automatically collects the following types of Browsing Information when you access an FNF website, online service, or application (each an "FNF Website") from your Internet browser, computer, and/or device:

- Internet Protocol (IP) address and operating system;
- browser version, language, and type;
- domain name system requests; and
- browsing history on the FNF Website, such as date and time of your visit to the FNF Website and visits to the pages within the FNF Website.

Like most websites, our servers automatically log each visitor to the FNF Website and may collect the Browsing Information described above. We use Browsing Information for system administration, troubleshooting, fraud investigation, and to improve our websites. Browsing Information generally does not reveal anything personal about you, though if you have created a user account for an FNF Website and are logged into that account, the FNF Website may be able to link certain browsing activity to your user account.

## Other Online Specifics

Cookies. When you visit an FNF Website, a "cookie" may be sent to your computer. A cookie is a small piece of data that is sent to your Internet browser from a web server and stored on your computer's hard drive. Information gathered using cookies helps us improve your user experience. For example, a cookie can help the website load properly or can customize the display page based on your browser type and user preferences. You can choose whether or not to accept cookies by changing your Internet browser settings. Be aware that doing so may impair or limit some functionality of the FNF Website.

Web Beacons. We use web beacons to determine when and how many times a page has been viewed. This information is used to improve our websites.

Do Not Track. Currently our FNF Websites do not respond to "Do Not Track" features enabled through your browser.

**Exhibit 2**
**Page 10 of 12**   Case 16-34486-tmb13   Doc 60   Filed 09/16/21

<u>Links to Other Sites</u>. FNF Websites may contain links to unaffiliated third-party websites. FNF is not responsible for the privacy practices or content of those websites. We recommend that you read the privacy policy of every website you visit.

## Use of Personal Information

FNF uses Personal Information for three main purposes:

- To provide products and services to you or in connection with a transaction involving you.
- To improve our products and services.
- To communicate with you about our, our affiliates', and others' products and services, jointly or independently.

## When Information Is Disclosed

We may disclose your Personal Information and Browsing Information in the following circumstances:

- to enable us to detect or prevent criminal activity, fraud, material misrepresentation, or nondisclosure;
- to nonaffiliated service providers who provide or perform services or functions on our behalf and who agree to use the information only to provide such services or functions;
- to nonaffiliated third party service providers with whom we perform joint marketing, pursuant to an agreement with them to jointly market financial products or services to you;
- to law enforcement or authorities in connection with an investigation, or in response to a subpoena or court order; or
- in the good-faith belief that such disclosure is necessary to comply with legal process or applicable laws, or to protect the rights, property, or safety of FNF, its customers, or the public.

The law does not require your prior authorization and does not allow you to restrict the disclosures described above. Additionally, we may disclose your information to third parties for whom you have given us authorization or consent to make such disclosure. We do not otherwise share your Personal Information or Browsing Information with nonaffiliated third parties, except as required or permitted by law. We may share your Personal Information with affiliates (other companies owned by FNF) to directly market to you. Please see "Choices with Your Information" to learn how to restrict that sharing.

We reserve the right to transfer your Personal Information, Browsing Information, and any other information, in connection with the sale or other disposition of all or part of the FNF business and/or assets, or in the event of bankruptcy, reorganization, insolvency, receivership, or an assignment for the benefit of creditors. By submitting Personal Information and/or Browsing Information to FNF, you expressly agree and consent to the use and/or transfer of the foregoing information in connection with any of the above described proceedings.

## Security of Your Information

We maintain physical, electronic, and procedural safeguards to protect your Personal Information.

## Choices With Your Information

If you do not want FNF to share your information among our affiliates to directly market to you, you may send an "opt out" request as directed at the end of this Privacy Notice. We do not share your Personal Information with nonaffiliates for their use to direct market to you without your consent.

Whether you submit Personal Information or Browsing Information to FNF is entirely up to you. If you decide not to submit Personal Information or Browsing Information, FNF may not be able to provide certain services or products to you.

For California Residents: We will not share your Personal Information or Browsing Information with nonaffiliated third parties, except as permitted by California law. For additional information about your California privacy rights, please visit the "California Privacy" link on our website (https://fnf.com/pages/californiaprivacy.aspx) or call (888) 413-1748.

Privacy Statement
ORD1047.doc

Printed: 09.15.21 @ 10:43 AM by SW
OR-LT-FXEB-01060.474578-872103288

**Exhibit 2**
**Page 11 of 12**    Case 16-34486-tmb13    Doc 60    Filed 09/16/21

For Nevada Residents: You may be placed on our internal Do Not Call List by calling (888) 934-3354 or by contacting us via the information set forth at the end of this Privacy Notice. Nevada law requires that we also provide you with the following contact information: Bureau of Consumer Protection, Office of the Nevada Attorney General, 555 E. Washington St., Suite 3900, Las Vegas, NV 89101; Phone number: (702) 486-3132; email: BCPINFO@ag.state.nv.us.

For Oregon Residents: We will not share your Personal Information or Browsing Information with nonaffiliated third parties for marketing purposes, except after you have been informed by us of such sharing and had an opportunity to indicate that you do not want a disclosure made for marketing purposes.

For Vermont Residents: We will not disclose information about your creditworthiness to our affiliates and will not disclose your personal information, financial information, credit report, or health information to nonaffiliated third parties to market to you, other than as permitted by Vermont law, unless you authorize us to make those disclosures.

## Information From Children

The FNF Websites are not intended or designed to attract persons under the age of eighteen (18). We do not collect Personal Information from any person that we know to be under the age of thirteen (13) without permission from a parent or guardian.

## International Users

FNF's headquarters is located within the United States. If you reside outside the United States and choose to provide Personal Information or Browsing Information to us, please note that we may transfer that information outside of your country of residence. By providing FNF with your Personal Information and/or Browsing Information, you consent to our collection, transfer, and use of such information in accordance with this Privacy Notice.

## FNF Website Services for Mortgage Loans

Certain FNF companies provide services to mortgage loan servicers, including hosting websites that collect customer information on behalf of mortgage loan servicers (the "Service Websites"). The Service Websites may contain links to both this Privacy Notice and the mortgage loan servicer or lender's privacy notice. The sections of this Privacy Notice titled When Information is Disclosed, Choices with Your Information, and Accessing and Correcting Information do not apply to the Service Websites. The mortgage loan servicer or lender's privacy notice governs use, disclosure, and access to your Personal Information. FNF does not share Personal Information collected through the Service Websites, except as required or authorized by contract with the mortgage loan servicer or lender, or as required by law or in the good-faith belief that such disclosure is necessary: to comply with a legal process or applicable law, to enforce this Privacy Notice, or to protect the rights, property, or safety of FNF or the public.

## Your Consent To This Privacy Notice; Notice Changes; Use of Comments or Feedback

By submitting Personal Information and/or Browsing Information to FNF, you consent to the collection and use of the information in accordance with this Privacy Notice. We may change this Privacy Notice at any time. The Privacy Notice's effective date will show the last date changes were made. If you provide information to us following any change of the Privacy Notice, that signifies your assent to and acceptance of the changes to the Privacy Notice.

## Accessing and Correcting Information; Contact Us

If you have questions, would like to correct your Personal Information, or want to opt-out of information sharing for affiliate marketing, visit FNF's Opt Out Page or contact us by phone at (888) 934-3354 or by mail to:

Fidelity National Financial, Inc.
601 Riverside Avenue,
Jacksonville, Florida 32204
Attn: Chief Privacy Officer

Privacy Statement
ORD1047.doc

Printed: 09.15.21 @ 10:43 AM by SW
OR-LT-FXEB-01060.474578-872103288

Exhibit 2
Page 12 of 12          Case 16-34486-tmb13    Doc 60    Filed 09/16/21

CERTIFICATE - TRUE COPY

DATE:                    September 16, 2021

DOCUMENT:        NOTICE OF INTENT TO SELL REAL PROPERTY AND MOTION FOR
AUTHORITY TO SELL REAL PROPERTY (*8815 SW Oleson Rd.,
Portland, OR 97223*)

    I hereby certify that I prepared the foregoing copy of the foregoing named document and have carefully compared the same with the original thereof and it is a correct copy therefrom and of the whole thereof.

CERTIFICATE OF SERVICE

    I hereby certify that I served a copy of the foregoing on:

ALL CREDITORS ON COURT MATRIX
ATTACHED

by mailing a copy of the above-named document to each of them in a sealed envelope, addressed to each of them at his or her last known address.  Said envelopes were deposited in the Post Office at Portland, Oregon, on the above date, postage prepaid.

    I hereby certify that the foregoing was served on all CM/ECF participants through the Court's Case Management/Electronic Case File system on the date set forth below.

    Dated:  September 16, 2021

VANDEN BOS & CHAPMAN, LLP

By:/s/Colleen A. Lowry for Douglas R. Ricks
   Douglas R. Ricks, OSB #04426
   Of Attorneys for Debtor

VANDEN BOS & CHAPMAN, LLP
Attorneys at Law
319 SW Washington Street, Suite 520
Portland, Oregon 97204-2690
(503) 241-4869

Label Matrix for local noticing
0979-3
Case 16-34486-tmb13
District of Oregon
Portland
Thu Sep 16 11:02:25 PDT 2021

Dept of Justice
Division of Child Support
Attn: Bankruptcy Unit
POB 14670
Salem, OR 97309-5013

Ditech Financial LLC FKA Green Tree Servicin
14841 Dallas Parkway, Suite 300
Dallas, TX 75254-7883

IRS
IRS
PO Box 7346
Philadelphia, PA 19101-7346

New Penn Financial, LLC d/b/a Shellpoint Mor
P.O. Box 10675
Greenville, SC 29603-0675

New Penn Financial, LLC d/b/a Shellpoint Mor
P.O. Box 10826
Greenville, SC 29603-0826

ODR Bkcy
955 Center NE #353
Salem, OR 97301-2555

Oregon Attorney General
Department of Justice
1162 Court St NE
Salem, OR 97301-4096

PRA Receivables Management, LLC
PO Box 41021
Norfolk, VA 23541-1021

US Attorney
1000 SW 3rd Ave #600
Portland, OR 97204-2936

US Attorney
US Attorney
1000 SW 3rd Ave #600
Portland, OR 97204-2936

US Attorney General
Department of Justice
10th & Constitution NW
Washington, DC 20530-0001

US Trustee, Portland
1220 SW 3rd Ave., Rm. 315
Portland, OR 97204-2829

1050 SW 6th Ave. #700
Portland, OR 97204-1160

Asset Recovery Group
PO Box 14949
Portland, OR. 97293-0949

Cascade Pathology Service Group
POB 4207
Portland, OR 97208-4207

Cascade Pathology Service Group
c/o National Service Bureau, Inc.
PO Box 747
Bothell, WA 98041-0747

(p)JPMORGAN CHASE BANK  N A
BANKRUPTCY MAIL INTAKE TEAM
700 KANSAS LANE FLOOR 01
MONROE LA 71203-4774

Chase
c/o Client Services, Inc.
3451 Harry S. Truman Blvd
Saint Charles, MO 63301-4047

DS Waters of North America
PO Box 660579
Dallas, TX 75266-0579

DS Waters of North America
c/o Collection Bureau of America
25954 Eden Landing
First Floor
Hayward, CA 94545-3816

Ditech Financial LLC
c/o CT Corp System, RA
388 State St., Ste 420
Salem, OR 97301-3581

Ditech Financial LLC fka Green Tree Servicin
P.O. Box 6154
Rapid City, South Dakota 57709-6154

Ditech Financial, LLC
PO Box 6172
Rapid City, SD 57709-6172

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

IRS
Attn: Civil Process Clerk
U.S. Attorney, District of Oregon
1000 SW 3rd, #600
Portland, OR 97204-2936

IRS
Centralized Insolvency Operation
P. O. Box 7346
Philadelphia, PA 19101-7346

Legacy Lab Services
PO Box 2829
Portland, OR 97208-2829

Legacy Lab Services
c/o Asset Systems, Inc.
4520 SE Belmont #280
Portland, OR 97215-1668

(p)DSNB MACY S
CITIBANK
1000 TECHNOLOGY DRIVE MS 777
O FALLON MO 63368-2222

Macy's
c/o Alltran Financial
PO Box 722910
Houston, TX 77272-2910

Macy's
c/o Northland Group, Inc.
PO Box 390905
Minneapolis, MN 55439-0905

Metropolitan Anesthesia
PO Box 4860
Murrells Inlet, SC 29576-2698

New Penn Financial, LLC
d/b/a Shellpoint Mortgage Servicing
P.O. Box 10675
Greenville, SC 29603-0675

ODR
ATTN: Bankruptcy Unit
955 Center St NE
Salem, OR 97301-2555

ODR
c/o Ellen Rosenblum, Attorney General
Oregon Department of Justice
1162 Court St, NE
Salem, OR 97301-4096

Oregon Clinic
Mail Stop 163
PO Box 5007
Portland, OR 97208-5007

Oregon Clinic
c/o Asset Recovery Group, Inc.
PO Box 14949
Portland, OR 97293-0949

PROVIDENCE
C/O PROFESSIONAL CREDIT SERVICE
PO BOX 7548
SPRINGFIELD, OR 97475-0039

Portland Credit Inc.
dba Fidelity Collection Svc
PO Box 429
Hillsboro OR 97123-0429

(p)PROVIDENCE HEALTH & SERVICES
ATTN CINDY NORRIS
PO BOX 4408
PORTLAND OR 97208-4408

Providence Health and Services
c/o Professional Credit Service
PO Box 7548
Springfield, OR 97475-0039

SKO Brenner American, Inc.
40 Daniel Street
PO Box 230
Farmingdale, NY 11735-0230

Salem Emergency Physicians
c/o Balanced Healthcare Receivables
PO Box 9577
Manchester, NH 03108-9577

Salem Emergency Physicians Service
PO Box 742547
Los Angeles, CA 90074-2547

Salem Hospital
c/o Americollect, Inc.
PO Box 1566
Manitowoc, WI 54221-1566

Salem Hospital
c/o Malcolm S. Gerald & Assoc.
PO Box 6990
Portland, OR 97228-6990

Salem Radiology Consultants
c/o Valley Credit Service
626 Appleblossom Ave NE
Salem, OR 97303-5008

State of Oregon
Employment Dept.
875 Union Street NE
Salem, OR 97311-0800

The Children's Clinic
POB 2848
Portland, OR 97208-2848

The Children's Clinic
c/o Fidelity Collection Svc
PO Box 429
Hillsboro, OR 97123-0429

(p)CITIBANK
PO BOX 790034
ST LOUIS MO 63179-0034

The Home Depot
c/o Portfolio Recovery Assoc.
PO Box 12914
Norfolk, VA 23541-0914

The Oregon Clinic
PO Box 5036
Portland, OR 97208-5036

U.S. Bank Trust National Association, as
Trustee of the Igloo Series IV Trust
c/o SN Servicing Corporation
323 Fifth Street
Eureka, CA 95501-0305

Viviscal
PO Box 406
Farmingdale, NY 11735-0406

Vladimir Polukeev
17238 SW Pleasanton Lane
Beaverton, OR 97003-4240

Willamette Valley Professional Svcs
PO Box 13129
Salem, OR 97309-1129

Willamette Valley Professional Svcs
c/o Americollect, Inc.
PO Box 1566
Manitowoc, WI 54221-1566

Willamette Valley Professional Svcs
c/o Malcom S. Gerald & Assoc.
332 South Michigan Ave, Ste 600
Chicago, IL 60604-4318

DOUGLAS R RICKS
319 SW Washington St #520
Portland, OR 97204-2620

Kristi Maria Polukeev
8815 SW Oleson Rd.
Portland, OR 97223-6831

Wayne Godare
222 SW Columbia St #1700
Portland, OR 97201-6652

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Chase
PO Box 15298
Wilmington, DE 19850

IRS
Attn: Attorney General of United States
10th Constitution NW #4400
Washington, DC 20530

Macy's
PO Box 689195
Des Moines, IA 50368

Providence Health and Services
PO Box 3299
Portland, OR 97208-3299

The Home Depot
PO Box 182676
Columbus, OH 43218

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Ditech Financial LLC

(d)ODR Bkcy
955 Center NE #353
Salem, OR 97301-2555

(u)U.S Bank National Association, not individ

(u)U.S. Bank Trust National Association, as T

(d)US Attorney General
Department of Justice
10th & Constitution NW
Washington, DC 20530-0001

(d)PRA Receivables Management, LLC
PO Box 41021
Norfolk, VA 23541-1021

(d)The Oregon Clinic
c/o Asset Recovery Group
PO Box 14949
Portland, OR 97293-0949

(u)Charlene Hiss

(u)SMGNine Placeholder
, OR

End of Label Matrix
Mailable recipients    62
Bypassed recipients     9
Total                  71